GREEN, Plaintiff in error, v. STATE, Defendant in error.

*No. 75-802-CR. Submitted on briefs January 6, 1977.—
Decided February 15, 1977.*
(Also reported in 250 N. W. 2d 305.)

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender, and *Ronald L. Brandt,* deputy state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Michael R. Klos,* assistant attorney general.

BEILFUSS, C. J.   The issues presented are:

1. Whether the defendant Green was denied his constitutional right to a speedy trial.

2. Whether it was prejudicial error to admit into evidence prior consistent statements of a prosecution witness.

3. Whether it was an abuse of discretion to impose a twenty year sentence to be served consecutively to other sentences being served.

On September 14, 1973, the defendant Green and another man committed an armed robbery in Milwaukee. On September 27, 1973, a complaint was issued charging Green as a party to the crime of armed robbery. Green was apprehended and arrested on October 8, 1973 in Dane county. He was charged with two counts of armed robbery and held in the Dane county jail. A detainer was sent by Milwaukee county authorities to Dane county. Green was convicted in Dane county and sentenced to the prison at Waupun. Although the record and briefs of counsel do clearly set forth the date, the Dane county court records reveal he was in the Dane county jail from October 9, 1973 until June 14, 1974. The Milwaukee county officers testified they were not sure of his whereabouts during this period.

The defendant Green was transferred to the Milwaukee county jail in the early fall of 1974. Again it is difficult

to be more specific because of a conflict in the records. The prosecuting attorney stated that the judgment roll indicated Green asked for a speedy trial October 14, 1974. Green said he was returned to Milwaukee county in September or October of 1974. The first notation on the judgment roll as we have it is dated November 27, 1974. There is no indication on the judgment roll or docket that Green demanded a speedy trial. However, there is a notation that he withdrew his demand for a speedy trial on November 29, 1974.

The original complaint was dismissed and a new one issued on November 27, 1974. On December 24, 1974, the defendant filed a motion to dismiss on the ground that he had been denied a right to speedy trial. Although there were several appearances and proceedings in the interim, this motion was not heard until the day of the trial, December 5, 1975—a period of eleven and one-half months.

Presumptively, the almost twelve-month delay between the preliminary examination and the trial is unreasonable and prejudicial. The state has a duty to the defendant and to society to bring him to a speedy trial. The docket entries reveal that there were several appearances by the defendant and additional proceedings and continuances where he was not present but his attorney was. One continuance of a month-and-a-half was granted because of the illness of a necessary witness. This delay was reasonable and necessary. Others were granted because of the absence of the defendant—presumably he was in Waupun. Whether he was in Waupun or the county jail, he was in the custody of the state; the state had the duty to produce him, and delay due to his nonappearance is not excusable.

We are well aware that our metropolitan courts are overburdened and congested and that some delay is inevitable. Because delay under these circumstances is

inevitable does not mean it is excusable in light of the constitutional[1] demands of speedy trial. It is within the power of the state to provide prosecutorial staffs and judicial staffs to afford the defendant and the public speedy trials, and it is the state's duty to do so.[2] The state is to be charged with delay but it is not to be weighed heavily against it in this case because the delay was not intentional nor motivated as a device to disadvantage the defendant in the preparation of his defense. And for the additional reason that the defendant or his counsel, or both of them, acquiesced in most of the delay.

The third factor to be considered is the assertion of the right to speedy trial. Green withdrew his demand for a speedy trial on November 29, 1974; however, he filed a motion to dismiss based on a denial of his constitutional rights by reason of the pre-arrest delay on December 23, 1974. In essence, Green claimed a denial of the right to speedy trial. While Green did not demand a speedy trial, the state was put on notice that he was asserting his right to speedy trial when he moved for dismissal. He asserted the right to speedy trial by seeking a dismissal based on his denial of the right to speedy trial. The state was duty bound to respond.

The final of the four factors to be considered is prejudice to the defendant. "[P]rejudice should be identified in the light of at least three interests that the speedy-trial provisions of the constitution were designed to protect: Prevention of oppressive pretrial incarceration, prevention of anxiety and concern by the accused, and prevention of impairment of the defense." *Ziegenhagen, supra* at 671, 245 N.W.2d at 663. Green was in custody

---

[1] Sixth Amendment to the United States Constitution and Art. I, sec. 7, Wisconsin Constitution.

[2] *See Ziegenhagen v. State,* 73 Wis.2d 656, 245 N.W.2d 656 (1976).

in the county jail or the prison at all times, therefore this prosecution did not result in pretrial incarceration. It appears that Green was unaware of the Milwaukee charges during the first year of their pendency. During this period Green's anxiety about the charges was minimal. During the thirteen months after he learned of the charges, and before trial, he was undoubtedly concerned and anxious about the pending charges. There is no allegation that Green's defense was impaired by the delay.

This court has recognized another type of prejudice. "[E]ven though a defendant is otherwise detained, the failure to have a pending charge brought to trial completely eliminates the possibility that concurrent sentences could be imposed."[3] However, we do not see any real prejudice in this respect. Green was in prison at all times during and after the prosecution. The sentence imposed here was consecutive to the sentence he was serving. If the sentence in this case had been pronounced a few months earlier it would have made no difference in his total incarceration time.

The delay in the case borders on a denial of the constitutional right to speedy trial. In balancing the factors of delay we conclude the defendant Green was not denied a speedy trial. The elements of delay that are to be weighed most heavily against the state are (1) intentional delay designed to disadvantage the defendant's defense, (2) a cavalier disregard of the defendant's right, (3) missing or forgetful witnesses,[4] and (4) prolonged pretrial incarceration. None of these elements appear in this case. If one or more did we would probably reach the opposite result.

[3] *Hadley v. State*, 66 Wis.2d 350, 364–65, 225 N.W.2d 461, 467 (1975). *Accord: Smith v. Hooey*, 393 U.S. 374, 378 (1969).

[4] *See Ziegenhagen v. State, supra*, n. 2.

At trial, Harold Finch, owner of the Golden Chicken Restaurant, testified that on September 14, 1973, he was robbed by two black men at gun point. He immediately called the police and provided them with a description of the robbers. He further stated that one of the men was carrying a .22 caliber pistol. Approximately one week later he testified that he saw the defendant near his restaurant, walking down the street. Later, the police brought several photographs to him and he identified Green as one of the robbers.

On cross examination Finch was questioned with regard to the testimony given at the preliminary examination in December, 1974. At trial, Finch testified that Green had a "medium mustache." But at the preliminary he testified the perpetrator of the crime had a "sparse," —"thin mustache." He also testified at trial that Green was not wearing a hat when the robbery was committed, but at the preliminary he stated Green was wearing a hat.

On redirect examination the assistant district attorney attempted to rehabilitate Finch's credibility by questions concerning prior consistent statements. Prior consistent statements made by Finch at the preliminary were read to him and he affirmed these statements. Defense counsel repeatedly objected to introduction of prior consistent statements.

Admission of prior statements of a witness into evidence is governed by sec. 908.01 (4) (a), Stats.

"(4) *Statements Which Are Not Hearsay.* A statement is not hearsay if:

"(a) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

"1. Inconsistent with his testimony, or

"2. Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or

"3. One of identification of a person made soon after perceiving him."

The defense appropriately introduced prior statements of Finch which were inconsistent with his testimony. The state responded by introducing other prior statements which were consistent with Finch's testimony. Prior consistent statements can be introduced for two reasons. First, if there is an express or implied charge that the testimony was recently fabricated or was the product of improper influence or motive, prior statements which are consistent with the testimony may be introduced to rebut this charge. Secondly, if the testimony concerns an identification of a person, a prior statement of identification of that person made soon after perceiving the person is admissible. The prior statements made by Finch at the preliminary examination were not offered to rebut a charge of recent fabrication or improper influence or motive and were not identification of a person soon after perceiving him. The first identification was shortly after the offense in October, 1971. The preliminary examination was in December of 1974. It was error to admit the prior consistent statements of Finch because they were hearsay. *Gelhaar v. State,* 41 Wis.2d 230, 242, 163 N.W.2d 609, 614 (1969), *cert. denied,* 399 U.S. 929.

■

The admissibility of former testimony is governed by sec. 908.045(1), Stats. Former testimony is not to be admitted unless the declarant is unavailable. The opportunity of the trier of fact to observe the demeanor of a witness confers depth and meaning to testimony.[5] Therefore, unless the prior testimony is not hearsay because of one of the exceptions of sec. 908.01(4)(a), or

---

[5] Wisconsin Evidence Code, 56 *Marq. L. Rev.* 155, 396 (1973) (commentary on sec. 908.045(1), Stats., unpublished in the Wisconsin Reports).

unless the declarant is unavailable, or unless some other. hearsay exception is satisfied, prior testimony should not be admitted.

While it was error to admit these statements, it was not prejudicial error requiring a new trial.[6] A new trial will not be granted unless it can be said that if the error had not occurred " ' ". . . the result might probably have been more favorable to the party complaining." ' " *Woodhull v. State*, 43 Wis.2d 202, 215, 168 N.W.2d 281, 289 (1969). Finch positively identified Green from a photo several weeks after the robbery. He identified him again at the preliminary examination and again at trial. Janice Nelson worked at the restaurant and was present during the robbery. She identified Green as one of the robbers. The impeachment of Finch went to his ability to remember details, but it did not seriously challenge the positive identifications made by both witnesses. If the prior statements of Finch had not been read to the jury, it appears that the result would have been the same. The error in admitting the prior statements was not prejudicial and not a sufficient ground to grant a new trial.[7]

Green argues that the trial court abused its discretion in imposing a twenty-year sentence to be served consecutively to any other sentence he was serving.

"This court has stated that it will review sentences to determine whether there has been an abuse of discretion. However, such questions will be treated in light of a strong policy against interference with the discretion of the trial court in passing sentence." *Ocanas v. State*, 70 Wis.2d 179, 183, 233 N.W.2d 457, 460 (1975).

---

[6] *See Gilbert v. United States Fire Ins. Co.*, 49 Wis.2d 193, 209, 181 N.W.2d 527, 536 (1970).

[7] *See* sec. 274.37, Stats.

"The exercise of discretion contemplates a process of reasoning based on facts that are of record or that are reasonably derived by inference from the record, and a conclusion based on a logical rationale founded upon proper legal standards." *Id.* at 185, 233 N.W.2d at 461.

Factors which are relevant to this process of reasoning and a sentencing determination

". . . include the defendant's personality, character and social traits, the results of a presentence investigation, the vicious or aggravated nature of the crime, the degree of defendant's culpability, the defendant's demeanor at trial, the defendant's age, educational background and employment record, the defendant's remorse, repentance and cooperativeness, the defendant's need for close rehabilitative control, and the rights of the public." *State v. Killory,* 73 Wis.2d 400, 408, 243 N.W.2d 475 (1976), citing *State v. Tew,* 54 Wis.2d 361, 367–68, 195 N.W.2d 615, 618–19 (1972).

"[R]equisite to a prima facie valid sentence is a statement by the trial judge detailing his reasons for selecting the particular sentence imposed." *McCleary v. State,* 49 Wis.2d 263, 281, 182 N.W.2d 512, 521 (1971).

Immediately after the jury returned with its verdict the trial judge imposed sentence. He did not have the benefit of a presentence investigation. He was not entirely clear whether Green had been convicted of five or six previous armed robberies in a twelve-year period. He also took note that the defendant's record included an escape from custody. Other than a short inquiry into Green's record, the entire statement of the judge concerning sentencing is as follows:

"It is the sentence of this Court then, Mr. Green, based upon your record, that you be punished by confinement at hard labor in the Wisconsin State Prison, with the Wisconsin State Prison at Waupun being designated as the reception center to which you shall be delivered by the sheriff, for an indeterminate term of not more than twenty years, consecutive to the sentence you are now serving."

This statement does not satisfy the requirement of *McCleary, supra,* that the trial judge detail his reasons for selecting the particular sentence imposed, but the *McCleary* court went on to say that when there is no statement of the factors used in imposing sentence there will be a search of the record "to determine whether in the exercise of proper discretion the sentence imposed can be sustained. It is not only our duty not to interfere with the discretion of the trial judge, but it is, in addition, our duty to affirm the sentence on appeal if from the facts of record it is sustainable as a proper discretionary act." *McCleary, supra* at 282, 182 N.W.2d at 522. Considering that this was Green's sixth conviction of armed robbery, that he had escaped from a prison camp, the need of the public to be protected, the aggravated nature of Green's crimes and the ineffectiveness of prior rehabilitative attempts, this sentence was not an abuse of discretion.

Green recognizes that pursuant to sec. 973.15(1), Stats., trial courts have the power to sentence consecutively.[8] He urges this court to adopt sec. 3.4(b) of the American Bar Association Standards Relating to Sentencing Alternatives and Procedures[9] as a guideline to

---

[8] *Drinkwater v. State,* 73 Wis.2d 674, 684, 245 N.W.2d 664, 669 (1976).

[9] "(b) Consecutive sentences are rarely appropriate. Authority to impose a consecutive sentence should be circumscribed by the following statutory limitations:

"(i) The aggregate maximum of consecutive terms should not be permitted to exceed the term authorized for an habitual offender (section 3.3) for the most serious of the offenses involved. If there is no provision for an habitual offender for the offenses involved, there should be a ceiling on the aggregate of consecutive terms which is related to the severity of the offenses involved; and

"(ii) The aggregate minimum of consecutive terms should be governed by the limitations stated in section 3.2; and

"(iii) The court should not be authorized to impose a consecutive sentence until a presentence report (sections 4.1–4.5), sup-

when consecutive sentences should be imposed. Undoubtedly trial judges are aware of this standard. We do not adopt the standard as obligatory but recommend it be given consideration as a guideline. The test still remains whether, in imposing consecutive sentences, the trial court abused its discretion.

*By the Court.*—Judgment and orders affirmed.

plemented by a report of the examination of the defendant's mental, emotional and physical condition (section 4.6), has been obtained and considered; and

"(iv) Imposition of a consecutive sentence should require the affirmative action of the sentencing court. The court should be authorized to impose a consecutive sentence only after a finding that confinement for such a term is necessary in order to protect the public from further criminal conduct by the defendant.

"These limitations should also apply to any sentence for an offense committed prior to the imposition of sentence for another offense, whether the previous sentence for the other offense has been served or remains to be served."