IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Francisco M. CAMACHO, Attorney at Law.

Supreme Court

*No. 83–1606–D. Submitted on briefs September 6, 1985.— Filed October 29, 1985.*
(Also reported in 375 N.W.2d 204.)

For the appellant and cross-respondent, Board of Attorneys Professional Responsibility, there was a brief by *Stephen T. Jacobs* and *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.,* Milwaukee.

For the respondent and cross-appellant. Francisco M. Camacho, there was a brief by *Mr. Camacho, pro se.*

PER CURIAM. *Attorney disciplinary proceeding; attorney's license revoked.*

The Board of Attorneys Professional Responsibility (Board) appealed from the report and recommendation of the referee on the grounds that the referee erred in

dismissing two counts in the Board's complaint alleging Attorney Camacho's failure to respond to Board inquiries concerning client grievances for the reason that the allegations of unprofessional conduct were themselves dismissed in the course of the proceeding and that the appropriate sanction for Attorney Camacho's misconduct is revocation of his license to practice law in Wisconsin, rather than the 16-month suspension of that license recommended by the referee. Attorney Camacho cross-appealed, claiming the referee erred in refusing to grant his motion to dismiss the disciplinary proceeding, the Board failed to meet its burden of proof regarding the allegations of unprofessional conduct, and, in the event the disciplinary proceeding is not dismissed on appeal, the referee's recommendation that Attorney Camacho be required to refund unearned fees to his clients should be rejected.

We determine the following:

(1) The two counts of Attorney Camacho's alleged failure to respond to Board inquiries concerning grievances constituted separate allegations of unprofessional conduct, notwithstanding the dismissal of the allegations of misconduct concerning which those Board inquiries had been made;

(2) The Board met its burden of proof concerning the allegations of misconduct;

(3) The referee properly denied Attorney Camacho's motion to dismiss the disciplinary proceeding;

(4) The referee's recommendation that Attorney Camacho be required to refund unearned fees to his clients is appropriate insofar as it is made a condition of the reinstatement of Attorney Camacho's license to practice law;

(5) Attorney Camacho's professional misconduct warrants the revocation of his license to practice law.

Attorney Camacho was admitted to practice law in Wisconsin in 1972 and practices in Milwaukee and Wau-

kesha counties. He has not been the subject of prior disciplinary proceedings. The referee in this proceeding is Attorney Stewart G. Honeck.

Following protracted proceedings, the referee found that Attorney Camacho engaged in unprofessional conduct in seven separate matters. The Board's complaint had alleged misconduct in ten matters, but because of problems in presenting proof to substantiate the allegations concerning three of them, the referee granted the Board's motion for dismissal of those three counts of unprofessional conduct. However, the Board presented evidence concerning Attorney Camacho's failure to cooperate in the Board's investigations of those three matters.

Nevertheless, the referee dismissed not only the allegations of unprofessional conduct concerning those three legal matters, but also the counts of failure to cooperate with the Board's investigations into those matters, which the referee deemed "an integral part of the principal cause of action alleging professional misconduct." The referee stated, "The second counts fall with the first counts."

The referee's dismissal of the failure-to-cooperate counts was improper. The court's rules and prior decisions clearly establish that an attorney's failure to cooperate with Board inquiries into alleged misconduct constitutes a separate act of misconduct, independent of the subject of the Board's investigations. SCR 22.07(2) and (3); *State v. Kennedy*, 20 Wis. 2d 513, 123 N.W.2d 449 (1963). However, the dismissal of these misconduct allegations does not affect the outcome of this proceeding for the reason that, without them, there is sufficient professional misconduct on the part of Attorney Camacho to warrant the revocation of his license.

The referee found that Attorney Camacho engaged in unprofessional conduct, including his failure to cooperate

with the Board in its investigation by failing to respond to letters of inquiry, with respect to the following matters.

(1) In 1981, Attorney Camacho was retained to represent a man who had been convicted of attempted murder. Attorney Camacho requested and received a $2,000 retainer, for which he agreed to order a trial transcript and review the client's case to determine the best way to appeal the conviction. Attorney Camacho never ordered the transcript, nor did he review the matter to determine whether an appeal was feasible or, if it were, how it should be undertaken. Attorney Camacho was discharged by his client two months later.

At the disciplinary hearing, Attorney Camacho introduced a document purported to have been signed by his client authorizing Attorney Camacho to retain the $2,000. However, the client denied that he had signed that document. He testified that Attorney Camacho had visited him in prison and had given him two blank sheets of paper to sign in order that Attorney Camacho could subsequently prepare whatever papers were necessary to pursue the appeal.

The referee found that Attorney Camacho did not earn all of the $2,000 retainer, that the client had not agreed that he could keep the full retainer and that Attorney Camacho refused to return the unearned portion of the fee despite requests by the client to do so. The referee concluded that Attorney Camacho's conduct violated SCR 20.16(1)(c), which requires a lawyer who withdraws from employment to promptly refund any part of a fee paid in advance that had not been earned, and that he failed to fully and fairly disclose to the Board all facts and circumstances pertaining to his alleged misconduct in this matter and refused to answer questions and provide any information deemed relevant to the Board's investigation of the matter, in violation of SCR 21.03 (4) and 22.07(2) and (3).

(2) During his representation of a client who had been adjudged delinquent, Attorney Camacho filed a malpractice action against the attorney who had represented the client in the delinquency proceeding. That action alleged the attorney had failed to challenge a confession given to the police by the client, who was at the time a minor, and asserted that the client's statement would have been inadmissible at trial because the police had not informed the client of his constitutional rights. The action further alleged that, without the confession, the state had no evidence on which to proceed. The malpractice action was ultimately dismissed for the client's repeated failure to appear for a deposition.

The referee found that, had he reasonably investigated the matter, Attorney Camacho would have discovered not only that the confession was not in violation of the client's constitutional rights, but that, even without the confession, the police had sufficient untainted information upon which to base a delinquency prosecution. Further, the client had entered a guilty plea after his attorney had reviewed the facts with him and determined that the client desired to plead guilty and that it was in the client's best interest to do so.

The referee found that Attorney Camacho knew or should have known that the filing of the malpractice action would serve merely to harass the attorney, and he concluded that the filing of that action was therefore in violation of SCR 20.36(1)(a).[1] The referee also concluded that Attorney Camacho failed to cooperate with the Board in its investigation of the matter, in violation of SCR 21.03(4) and 22.07(2) and (3).

---

[1] SCR 20.36(1)(a) provides: "(1) In his or her representation of a client, a lawyer may not:

"(a) File a suit, assert a position, conduct a defense, delay a trial or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another."

(3) Early in 1982, Attorney Camacho was appointed by the state public defender to represent a minor charged with parole violation. The client was the same person on whose behalf Attorney Camacho commenced the malpractice action referred to above. After having been adjudged delinquent, the client was sent to the Ethan Allen School at Wales.

Attorney Camacho told the client he would better be able to represent him if he were retained as a private attorney rather than under appointment from the state public defender. Attorney Camacho suggested that the client pay him with trust funds to which the client would very soon become entitled upon reaching the age of majority. The client agreed to retain Attorney Camacho privately, and at Attorney Camacho's suggestion, he subsequently signed a release permitting Attorney Camacho to withdraw on his behalf the entire amount in the trust, approximately $6,600.

Attorney Camacho withdrew the funds, as a result of which the client lost approximately $950 interest as a penalty for early withdrawal. The client testified that Attorney Camacho had told him to take the funds out of the trust so that the state could not take them to pay for the client's stay at the Ethan Allen School. In fact, the client's parents had been paying those costs.

The money withdrawn from the trust was to be held in trust for the client by Attorney Camacho, and the client agreed that Attorney Camacho's legal fees, which he was led to believe would not exceed $1,000, would be paid from those funds. Attorney Camacho did not keep the funds in trust but appropriated the entire amount for his legal fees, although he and the client had never agreed upon the amount of those fees or when those fees would be paid. Attorney Camacho refused to answer the client's written request for the return of the funds.

The referee found that Attorney Camacho would have been entitled to a portion of the trust funds only after

he and the client had reached agreement on what portion had been earned and when Attorney Camacho would become entitled to it. However, no such agreement was ever reached. The referee concluded that Attorney Camacho violated SCR 20.50(2)(d), which requires the prompt payment or delivery to the client, upon request, of funds in the possession of the attorney to which the client is entitled.

(4) In May, 1982, Attorney Camacho was retained to represent a man in connection with a Texas arrest warrant for delinquent child support. In addition to giving Attorney Camacho a $500 retainer, the client and his wife gave him personal papers, including birth certificates and papers from the Immigration and Naturalization Service. The following day, Attorney Camacho returned to the client's house to obtain an additional retainer, although he had not previously discussed with the client the need for more money. At that time, the client and his wife decided not to retain Attorney Camacho any longer, and the client's wife called Attorney Camacho's office several times, leaving messages that he should cease representing the client and should return the unearned portion of the $500 retainer and all of their papers.

Attorney Camacho did not represent the client concerning the arrest warrant, and the client was required to retain other counsel for that purpose. Attorney Camacho did not return any portion of the unearned retainer and failed to return the papers to his client until a complaint had been made to the Board.

The referee concluded that Attorney Camacho's conduct violated SCR 20.16(1)(b) and (c), which require a lawyer withdrawing from employment to take reasonable steps to avoid foreseeable prejudice to the client's rights, to deliver to the client all papers and property to which the client is entitled and to promptly refund any part of a fee paid in advance that has not been earned.

The referee also concluded that Attorney Camacho failed to cooperate with the Board's investigation in this matter, in violation of SCR 21.03(4) and 22.07(2) and (3).

(5) The referee concluded that, by refusing to respond to Board inquiries, Attorney Camacho failed to cooperate with the Board in its investigation of a client's complaint concerning his representation of her, even though there were no allegations that Attorney Camacho had engaged in unprofessional conduct in the representation itself. The referee concluded that Attorney Camacho violated SCR 21.03(4) and 22.07(2) and (3).

(6) In June, 1982, a woman retained Attorney Camacho to commence an action on her behalf against her former husband, and she paid him $1,000 in cash and promised to pay an additional $4,000, which promise was secured by a mortgage on her home. The $1,000 retainer was made so that Attorney Camacho could begin taking depositions in the proposed action, and the client paid the additional $4,000 following the sale of her home in September of 1982. In addition, the client gave Attorney Camacho a number of papers relating to the proposed action.

Attorney Camacho never commenced an action against the client's former husband; he never took a deposition of the former husband or of anyone else; after the client terminated his representation, he failed to return the client's papers. The referee found that Attorney Camacho had not earned the entire $5,000 paid to him and that he failed to return the unearned portion of the fee to the client. The referee concluded that Attorney Camacho thereby violated SCR 20.16(1)(b) and (c) and that he failed to cooperate with the Board in its investigation of the matter, in violation of SCR 21.03(4) and 22.07(2) and (3), by refusing to respond to Board requests for information concerning the matter.

(7) In August, 1982, a man retained Attorney Camacho to commence divorce proceedings and paid him $500

to do so. Attorney Camacho never commenced that action, nor did he return any part of the $500 retainer, despite his client's request to do so. The referee concluded that Attorney Camacho thereby violated SCR 20.16(1)(c) and failed to respond to the Board in its investigation of the matter, in violation of SCR 21.03 (4) and 22.07(2) and (3).

In addition to his findings of Attorney Camacho's professional misconduct, the referee determined the amount of unearned fees collected by Attorney Camacho in the matters set forth above at (1), (3), (4), (6) and (7), and he found those clients entitled to refunds in the amounts of $1,500, $6,647.95, $4,000, $400 and $400, respectively.

At the disciplinary hearing, Attorney Camacho claimed that he had earned or was entitled to retain the entire amounts paid by those clients, even though he testified that he had kept no time records of any kind and that it was his usual practice not to keep such records. Also, his testimony disclosed that he had no criteria for determining the reasonable value of his services and that he took no notes of conversations he had on his clients' behalf or research done in pursuit of their legal matters. The referee concluded that Attorney Camacho failed to meet his burden to establish, as an affirmative defense, his entitlement to the fees collected from his clients.

On the issue of his failure to cooperate with Board investigations of these matters, Attorney Camacho testified that he had spent considerable time and effort responding to Board inquiries concerning other grievances filed against him prior to those considered in this proceeding, and he argued he should not have been required to expend similar time and effort repeatedly. The referee found Attorney Camacho's failure to cooperate with the Board to have been clearly intentional.

Concerning appropriate discipline for Attorney Camacho's misconduct, the Board argued that the totality of that misconduct warrants the revocation of Attorney Camacho's license to practice law. The Board summarized the misconduct as follows: one count of the failure to return client funds, four counts of failure to return unearned fees, two counts of failure to return client papers, one count of filing a meritless lawsuit and seven counts of failing to cooperate with the Board in its investigations. In support of its position, the Board cited *Disciplinary Proceedings Against Glasschroeder*, 113 Wis. 2d 672, 335 N.W.2d 621 (1983), in which the court revoked an attorney's license for the improper use of trust funds. The Board also cited *Disciplinary Proceedings Against Keeling*, 114 Wis. 2d 1, 335 N.W.2d 882 (1983), in which the court suspended an attorney's license for one year as discipline for his failure to return one client's fees and his failure to respond to Board inquiries into the matter.

In support of its argument for license revocation, the Board noted the type of client affected by Attorney Camacho's misconduct, characterizing most of them as having "particular handicaps" making them vulnerable to Attorney Camacho's practices. Three of them had substantial difficulty understanding English, although Attorney Camacho is fluent in their native language, Spanish. Further, one of them was, at least initially, a minor and was both unsophisticated and vulnerable to Attorney Camacho, as shown by his ready agreement to Attorney Camacho's resignation as public defender in order that the minor could retain him privately.

Attorney Camacho disputed most of the referee's findings of fact concerning his misconduct, but he presented no convincing arguments for his position. For example, on the question whether he commenced the malpractice action solely to harass the attorney, Attorney Camacho

argued that this was a determination that could have been made only by the trial judge before whom that action was pending. He further argued that because the defendant attorney had not objected to that complaint as having failed to state a cause of action, the action therefore had merit and was not intended merely to harass the attorney.

Attorney Camacho also contended that he was victimized by the Board in its investigation and prosecution of these matters, that the Board made only token investigation of his clients' grievances, and that it unjustifiably relied on grievances made by persons other than the clients themselves. Attorney Camacho had made the same arguments before the referee during the course of the disciplinary proceeding, and they were properly rejected as being without support in the record.

On the issue of appropriate discipline, we note Attorney Camacho did not cross-appeal from the referee's recommmendation that his license to practice law be suspended for 16 months. However, he opposed the Board's position that license revocation is appropriate discipline. He attempted to distinguish *Glasschroeder, supra,* from this case on the basis that the former involved the appropriation of more than $90,000 of client funds and resulted in the attorney's conviction of embezzlement and forgery. Attorney Camacho also attempted to distinguish *Keeling, supra,* on the basis that the attorney in that proceeding never appeared, resulting in discipline imposed by default.

On the issue of refunding unearned fees, Attorney Camacho argued that the referee had disclosed no basis on which he determined the portion of fees in each case that was unearned. While this is true, the referee had properly shifted to Attorney Camacho the burden of establishing his entitlement to all or part of those fees. In response, Attorney Camacho merely argued that, because the sum collected had been agreed upon beforehand

by himself and the respective client, there could be no complaint that any portion of those fees was unearned. Thus, Attorney Camacho failed to establish his entitlement to those fees.

In his cross-appeal from the referee's report, Attorney Camacho first argued that the referee should have granted his motion to dismiss the disciplinary proceeding on the grounds that the Board's complaint was frivolous, the Board had conducted incomplete investigations based on complaints from persons other than Attorney Camacho's clients, and the requests for his response to client grievances had not come from the Board, but from investigators working for the Board. The motion to dismiss also contended that the referee lacked subject matter and personal jurisdiction. The grounds for the motion to dismiss are without merit, and the referee properly denied the motion.

Attorney Camacho also contended that the Board failed to meet its burden of proof to establish his misconduct. He argued that "nowhere does the referee state by what standard of proof he made his findings." While there was no statement in the referee's report concerning the applicable evidentiary standard, during the hearing the referee made numerous references to the "clear and satisfactory evidence" standard as applicable to the proceeding. Further, case law has explicitly made that standard applicable to attorney disciplinary proceedings. *Disciplinary Proceedings Against Bengston*, 116 Wis. 2d 650, 651, 342 N.W.2d 744 (1984).

We accept the referee's findings of fact. They were, for the most part, based on the referee's assessment of the credibility of the witnesses, and on review we will not interfere with that determination. The referee obviously chose to believe the testimony of the clients and other witnesses, rather than that of Attorney Camacho. With respect to those not based on witness credibility, the

referee's findings were not clearly erroneous, and we accept them.

We also accept the referee's conclusions concerning Attorney Camacho's misconduct, but we determine that such misconduct warrants discipline more severe than that recommended by the referee. We find particularly egregious Attorney Camacho's misappropriation of his client's trust funds under the pretense that he had earned them as professional fees. Attorney Camacho's other acts of professional misconduct are likewise serious. Under the circumstances, we determine that the revocation of Attorney Camacho's license to practice law in Wisconsin is appropriate discipline.

In addition to the revocation of his license, we determine that Attorney Camacho should be required to refund to his clients the amount of unearned fees he had collected from them and that he do so as a condition of any reinstatement of his license to practice law. We also determine that Attorney Camacho should be required to return all client papers in his possession and that he do so forthwith.

Although the court has not promulgated rules with respect to restitution in attorney disciplinary proceedings, the court's policy has been to determine the appropriateness of ordering restitution on a case-by-case basis. Thus, we have ordered restitution in prior disciplinary cases when we have determined it appropriate, considering both the attorney who had been found to have engaged in unprofessional conduct and the persons who suffered financial loss as a result of that conduct. On the other hand, we have declined to order restitution in other cases when we determined that the rights and interests of those who suffered financial loss as a result of the attorney's misconduct might better be served if they pursued their remedies outside the scope of the disciplinary proceeding itself. In determining whether

to order restitution in a disciplinary proceeding, we also consider the rights of the attorney, including the right, in certain circumstances, to a full adversary hearing on the issue of restitution.

Having considered these factors in this proceeding, we conclude that restitution as a condition of reinstatement of Attorney Camacho's license to practice law is appropriate. However, our order for the refund of unearned fees does not limit Attorney Camacho's former clients' recourse to other remedies, by civil action or otherwise.

IT IS ORDERED that the license of Francisco M. Camacho to practice law in Wisconsin is revoked, effective December 1, 1985.

IT IS FURTHER ORDERED that in the event Francisco M. Camacho applies for reinstatement of his license to practice law, he shall furnish as a condition of consideration of such application satisfactory evidence that he has refunded unearned fees to the persons and in the amounts determined by the referee in this proceeding.

IT IS FURTHER ORDERED that, within 30 days of the date of this order, Francisco M. Camacho return to his clients all documents, papers, and property of his clients in his possession.

IT IS FURTHER ORDERED that within 120 days of the date of this order Francisco M. Camacho pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding.

IT IS FURTHER ORDERED that Francisco M. Camacho comply with the provisions of SCR 22.26 concerning the requirements of a person whose license to practice law in Wisconsin has been revoked.

SHIRLEY S. ABRAHAMSON, J. (concurring). For the first time, the court expressly sets forth several factors it considers in ordering restitution in disciplinary matters. This is a welcome sign that guidelines that are

much needed will be developed. See *In re Disciplinary Proceedings Against Guenther,* 124 Wis. 2d 476, 483, 369 N.W.2d 700 (1985) (Abrahamson, J., concurring). I believe the court should go even further. As I have written previously, I favor the court promulgating rules in regard to restitution for referees and this court to use in considering and awarding restitution. Published rules are more readily accessible than a series of court decisions; rule-making procedures would give the court an opportunity to examine all aspects of restitution and would give the public, members of the bar, referees and the Board of Attorneys Professional Responsibility an opportunity to offer suggestions.