### In re Petition of Earl CHARLTON.

### No. 93–Misc–29.

United States District Court,
E.D. Wisconsin.

Oct. 13, 1993.

Timothy J. Pike, Milwaukee, WI, for plaintiff.

James E. Doyle, Atty. Gen. of Wisconsin by Warren D. Weinstein, Madison, WI, for defendant.

DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

Petitioner, Earl A. Charlton, an attorney who was licensed to practice law in the state of Wisconsin, was charged on June 5, 1987, by the Board of Professional Responsibility of the State of Wisconsin [board] with nine counts of misconduct. The board subsequently amended the complaint on two occasions to add four other misconduct counts against Mr. Charlton. As a result of the amendments, a total of thirteen misconduct counts were launched against Mr. Charlton.

Initially, attorney Robert P. Harland was appointed by the Wisconsin supreme court as referee on June 12, 1987. By order of June 18, 1987, the Wisconsin supreme court appointed Judge William C. Sachtjen as successor referee. He heard evidence in the disciplinary matter for approximately twenty-five days. Judge Sachtjen died before the disciplinary hearings were completed.

Attorney Norman C. Anderson was then appointed successor referee by order of the Wisconsin supreme court on August 2, 1990. A new disciplinary hearing commenced before referee Anderson on February 15, 1991, and lasted approximately twenty-four days. Referee Anderson found that the evidence presented supported eleven of the thirteen counts of misconduct but dismissed counts V and XII having determined that the evidence presented to establish misconduct as to those charges was not clear and convincing. (Findings of Fact and Conclusions of Law and Recommendation of Referee at 58 and 61.) Based on his findings and conclusions, the referee approved the board's recommendation that Mr. Charlton's license to practice law in the state of Wisconsin be revoked.

On review, the Wisconsin supreme court found that the evidence was sufficient to sustain all but one of the eleven remaining counts of misconduct. *In the Matter of Disciplinary Proceedings Against Charlton*, 174 Wis.2d 844, 498 N.W.2d 380, *petition for cert. filed*, (U.S. Aug. 23, 1993). The Wisconsin supreme court then revoked the license of Mr. Charlton to practice law in the state of

Wisconsin. *Charlton,* 174 Wis.2d at 877, 498 N.W.2d 380.

Upon receiving notice of the state's revocation of Mr. Charlton's license to practice law, the clerk of court for the eastern district of Wisconsin issued an order on June 14, 1993, which revoked his license to practice before the United States district court, eastern district of Wisconsin, in accordance with Local Rule 2, Section 2.05. Under the procedure contemplated by the local rules of the eastern district of Wisconsin, an order of the highest court of a state disbarring a member of its bar will result in disbarment of said member from practice before the eastern district. *See* Local Rule 2, Section 2.05. However, local rule 2.05 allows an attorney who is disbarred to file a petition seeking reinstatement of his or her membership in the bar of this court.

On June 21, 1993, Mr. Charlton filed such a petition, along with a supporting brief as permitted under local rule 2.05. The office of the attorney general of the state of Wisconsin, on behalf of the board, responded to Mr. Charlton's petition. After the matter was fully briefed by the parties, this court conducted a hearing on August 30, 1993.

In his petition, Mr. Charlton urges that this court not defer to the state's disciplinary action. He contends that the court should not follow the lead of the Wisconsin supreme court because the state proceedings were deficient in four respects: (1) the board unreasonably delayed the investigation and prosecution of the charges against him for nearly six years in violation of his Fourteenth Amendment right to procedural due process; (2) the referee improperly excluded relevant evidence of prejudice in connection with his defenses of laches and procedural due process; (3) the Wisconsin supreme court retroactively applied case law to deny him the right to present his laches defense; and (4) the referee's findings which the Wisconsin supreme court relied upon are based on the testimony of a witness who was not credible.

Federal district courts do not have jurisdiction to review or modify a final judgment of a state's highest court. *Leaf v. Supreme Court of the State of Wis.,* 979 F.2d 589, 596 (7th Cir.1992). Nevertheless, it is very clear that this court is empowered and obligated to grant a hearing to a lawyer disbarred by the state to determine whether he or she is entitled to practice in this federal court. Not only does our local rule 2.05 so provide, but the right to a hearing was fully recognized by the United States Supreme Court in *Selling v. Radford,* 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 (1917), and by the court of appeals for the seventh circuit in *In re Jafree,* 759 F.2d 604, 608 (1985). Thus, it is appropriate that this court examine and rule upon the challenges advanced by Mr. Charlton.

In the matter at bar, a remarkably full (if questionably prolonged) procedure was conducted by the state. The hearings before two different referees lasted 49 days. The referee's decision was 63 pages long and contained 121 findings of fact. The Wisconsin supreme court's decision was 33 pages in length and was approved by all of the justices who participated.

The case law demands that some deference be afforded to the state's procedures and decision. *In the Matter of Jafree,* 759 F.2d at 608 (citing *United States v. Theard,* 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957)). On the other hand, the United States Supreme Court, in *Selling,* 243 U.S. at 51, 37 S.Ct. at 379, has set forth three conditions which may negate the effect of a state court judgment of suspension or disbarment:

1. That the state procedure from want of notice or opportunity to be heard was wanting in due process; 2, that there was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part that we could not consistently with our duty accept as final the conclusion on that subject; or 3, that some other grave reason existed which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained to do so.

## I. *Procedural Due Process*

■ The Fourteenth Amendment right to procedural due process requires that a party not be deprived of life, liberty or property without notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); *Cleveland Brd. of Education v. Loudermill,* 470 U.S. 532, 546–547, 105 S.Ct. 1487, 1495–96, 84 L.Ed.2d 494 (1985); *Cholewin v. City of Evanston,* 899 F.2d 687, 689 (7th Cir.1990).

■ Mr. Charlton argues that he was denied a "meaningful opportunity" to be heard due to the almost six year delay between the filing of the first grievance against him and the issuance of the complaint by the board. Mr. Charlton asks this court to hold that the nearly six year delay is a per se violation of his right to procedural due process.

Petitioner's counsel notes that the alleged misconduct occurring in 1980 resulted in the first grievance which was not filed until July 21, 1981; counsel argues that the belated issuance of the formal complaint by the board (June 21, 1987) is facially a denial of Mr. Charlton's right to procedural due process. In my opinion, this contention is Mr. Charlton's best shot, and it has been presented by petitioner's able counsel with cogency. In addition to the delay referred to by Mr. Charlton, I am mindful of the extensive time that expired between the filing of the formal complaint in 1987 and the state court's actual order of revocation (August 23, 1993). Thus, a disturbingly long time elapsed from start to finish (1980 to 1993) in this disciplinary proceeding. Is it fair to subject a lawyer to thirteen years of investigation and litigation regarding his alleged misconduct? The correct answer to the question is that it depends on all of the circumstances; this includes an examination of such factors as the existence of prejudice to the attorney, the complexity of the proceedings and the reasons for the delays. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433–34, 102 S.Ct. 1148, 1156–57, 71 L.Ed.2d 265 (1982); *East Coast Novelty Co., Inc. v. City of New York,* 781 F.Supp. 999, 1007 (S.D.N.Y.1992).

As a preliminary matter, the board asserts that Mr. Charlton's contention that he was harmed by the delay in prosecuting the grievances is a substantive due process violation and must be analyzed under the third prong of the *Selling* test. I disagree. That the board delayed in prosecuting Mr. Charlton's grievances is a challenge to the "meaningfulness" of the petitioner's opportunity to be heard, which is a component of the right to procedural due process. *Armstrong,* 380 U.S. at 550–552, 85 S.Ct. at 1190–91.

■ Mr. Charlton maintains that in determining whether his Fourteenth Amendment right to procedural due process was violated, this court need not address such factors as prejudice to the defendants because of the delay or the reasons for the delay but need only address the length of the delay itself. In support of this procedural due process argument, Mr. Charlton cites a number of criminal cases decided by the Wisconsin supreme court in which periods of delay far less than that at issue here between preliminary examination and trial were held to be "presumptively prejudicial." *State of Wisconsin v. LeMay,* 155 Wis.2d 202, 455 N.W.2d 233 (1990); *Hatcher v. State of Wisconsin,* 83 Wis.2d 559, 266 N.W.2d 320 (1978); *Green v. State of Wisconsin,* 75 Wis.2d 631, 250 N.W.2d 305, *cert. denied,* 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977); *Norwood v. State of Wisconsin,* 74 Wis.2d 343, 246 N.W.2d 801 (1976). Contrary to petitioner's suggestion, the case law he cites does not stand for the proposition that a "presumptively prejudicial" delay, by itself, amounts to a violation of a defendant's constitutional rights.

In the criminal cases cited by Mr. Charlton, the right of the defendant at issue was his Sixth Amendment right to a speedy trial and not his Fourteenth Amendment right to procedural due process. In those cases, the Wisconsin supreme court held that its due process inquiry did *not* end with its conclusion that a particular delay was presumptively prejudicial. *See LeMay,* 155 Wis.2d at 212–213, 455 N.W.2d 233; *Hatcher,* 83 Wis.2d at 566–67, 266 N.W.2d 320; *Green,* 75 Wis.2d at 636–638, 250 N.W.2d 305; *Norwood,* 74 Wis.2d at 353, 246 N.W.2d 801; *cf.*

*Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972) (only if a delay in bringing a defendant to trial is of such a length that it is presumptively prejudicial will the court inquire into factors of reason for the delay and actual prejudice to the defendant).

Instead, the Wisconsin supreme court in each instance concluded that a finding that a delay is presumptively prejudicial means that the court must then assess the other factors noted above. Moreover, in none of the cases cited by Mr. Charlton did the court conclude, after balancing all of the relevant factors, that the delay—which the court initially found to be presumptively prejudicial—violated the defendant's constitutional rights.

▮▮▮ Further support for the proposition that a court should consider the circumstances surrounding the delay of a pre-termination hearing in its due process analysis can be found in the body of case law dealing with pre-indictment delays. Although this line of cases involves deprivations of one's liberty as opposed to one's property, deprivations of procedural due process are to be analyzed in an identical fashion regardless whether a given procedure affects one's right to life, liberty or property. *Burch v. Apalachee Community Mental Health Services,* 804 F.2d 1549, 1555 (11th Cir.1986), *vacated, reh'g granted,* 812 F.2d 1339 (11th Cir.1987) (en banc), *rev'd on other grounds,* 840 F.2d 797 (11th Cir. 1988).

▮▮▮ In considering whether a pre-indictment delay will amount to a due process violation, a court is to consider whether (1) the delay caused actual and substantial prejudice to the defendant's right to a fair hearing; and (2) the delay was motivated by tactical advantage or some other impermissible reason. *See United States v. Anagnostou,* 974 F.2d 939, 941 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1943, 123 L.Ed.2d 649 (1993); *see also United States v. Smith,* 5 F.3d 259, 260–61 (7th Cir.1993). These cases demonstrate that something more than a pretermination delay, even a lengthy delay, must be present before the court will conclude that a violation of one's due process rights has occurred.

Thus, I am obliged to decline Mr. Charlton's invitation to find that the six year delay between the filing of the first grievance (1981) and the filing of the board's first complaint (1987) is a per se violation of his right to procedural due process under the Fourteenth Amendment.

Mr. Charlton refers to the Wisconsin supreme court's adopted findings regarding prejudice and its decision that he failed to demonstrate prejudice and argues that such findings rest upon an incomplete and incorrect analysis on the part of the referee; as a result, petitioner urges that (in the words of *Selling,* 243 U.S. at 51, 37 S.Ct. at 379) there is a "grave reason" for this court's not deferring to the Wisconsin supreme court's decision to disbar him. He contends that the referee's analysis was inadequate because the referee excluded evidence on the issue of whether he suffered prejudice because of the delay in prosecuting the grievances but later addressed prejudice as a relevant issue in his findings.

In addition, Mr. Charlton alleges that the Wisconsin supreme court's adopted findings with regard to prejudice are incomplete because the referee made only one factual finding on the issue of prejudice. He charges that the referee's limited finding ignored several other aspects of prejudice which were advanced by him during the course of the hearing; namely, the faded memories of witnesses and the disappearance of documents due to the bankruptcy of various corporations and flooding problems in his office.

▮▮ In my opinion, the ruling of the referee identified by Mr. Charlton in his petition did not bar the admission of evidence on the issue of prejudice. Rather, the referee's ruling precluded Mr. Charlton from presenting additional evidence on the issue of whether there was a delay in prosecuting the grievances because the referee believed that a delay had already been proved. (Transcript of Hearing at 3843–3846.)

That the referee did not exclude evidence on the issue of prejudice is further demonstrated by the fact that, in briefs filed with the referee and the Wisconsin supreme court, Mr. Charlton relies on evidence *in the rec-*

*ord* to support his claim that he suffered prejudice due to the delay. In his "Brief in Support of Motion to Dismiss Based on Laches and Substantive Due Process," Mr. Charlton points to evidence in the record in an effort to show that he was prejudiced by the death of key witnesses, loss of memory and lost documents caused by the delay. (R.Doc.Index # 55.) In his appellate brief before the Wisconsin supreme court, Mr. Charlton again identifies evidence in the record to show that the death of key witnesses and memory loss due to the delay prejudiced his defense of the grievances. (Appellant's Brief at 7–9.)

Because I find that the referee did not exclude evidence on the issue of whether Mr. Charlton suffered prejudice by reason of the delay, I am unable to reject the Wisconsin supreme court's decision on the ground that the adopted findings regarding prejudice rest on an erroneous evidentiary ruling of the referee.

■ Mr. Charlton also contends that the referee's failure to make specific findings regarding the faded memories of witnesses and lost documentation justifies my departing from the disbarment decision of the Wisconsin supreme court. A review of the referee's report confirms that the referee's findings on the issue of prejudice were limited to the issue of the death of key witnesses. Nevertheless, the record reveals that in posturing his laches and due process arguments before the referee, Mr. Charlton chose to argue that the "primary" way he had suffered prejudice from the delay was through the death of key witnesses. (Brief in Support of Motion to Dismiss Based on Laches and Substantive Due Process at 11 and 24.) Indeed, much of his brief submitted to the referee at the close of the hearing discussed that one factor and recounted the instances in which it had affected his defense. The remaining aspects of prejudice—faded memories and lost documents—were framed by Mr. Charlton as secondary to the death of key witnesses. (Brief in Support of Motion to Dismiss Based on Laches and Substantive Due Process, at 24.)

■ Although the referee failed to make specific findings as to the secondary aspects of prejudice, I do not believe (under all the circumstances) that the "principles of right and justice" permit the court to refuse to follow the Wisconsin disbarment. *Selling,* 243 U.S. at 51, 37 S.Ct. at 379. This is so because I find that implicit in both the referee's rejection of the primary argument that the death of key witnesses prejudiced Mr. Charlton's defense and his ultimate finding that Mr. Charlton had not demonstrated prejudice was the referee's conclusion that Mr. Charlton had not established that the dulled memories of witnesses and lost documentation prejudiced Mr. Charlton's defense.

Furthermore, based on my own review, I believe that the record supports the conclusion that Mr. Charlton did not sufficiently prove that the dulled memories of witnesses and lost documentation due to the delay actually prejudiced his defense. Although many witnesses testified that their memories had faded, I did not locate any evidence in the record (nor has Mr. Charlton pointed the court to any evidence) to suggest that these witnesses would have been able to assist Mr. Charlton in his defense had there been no delay.

Mr. Charlton's claim that lost documents prejudiced his defense is also unsubstantiated. While there was testimony that a number of pertinent corporations underwent bankruptcy, Mr. Charlton has identified no evidence (nor did my review uncover any) to suggest that the bankruptcies contributed to the incompleteness of *relevant* documentation. Though the record confirms that some flooding in the basement of Mr. Charlton's office destroyed a number of his files, Mr. Charlton has not pointed to any evidence in the record (nor has my review of the record exposed any evidence) to verify the type of information contained in the files which were destroyed. In the absence of such evidence, there is no basis on which to conclude that documents which were relevant to any of the thirteen counts in the complaint were destroyed by the flood.

The respondent contends that the long delay in initiating these disbarment proceedings was in part caused by the complexity of the matter. I have already noted the dura-

tion of the hearings and the length of the findings of both the referee and the state supreme court. In addition, I have had the full record before me; it consists of a numbing 12 boxes of pleadings, transcripts, exhibits and briefs totalling over 10,000 pages (estimated). In my opinion, the state's argument that this investigation involved a complicated tangled skein has impressive cogency.

For these reasons, I am confident that the referee's omission of specific findings concerning the faded memories of witnesses and lost documentation does not constitute a "grave reason" justifying rejection of the Wisconsin supreme court's disciplinary decision under the *Selling* test.

## II. Retroactive Application of Case Law to Deny Laches Defense

The petitioner asserts that the Wisconsin supreme court's retroactive application of its decision in *Disciplinary Proceedings Against Eisenberg*, 144 Wis.2d 284, 423 N.W.2d 867 (1988) presents a "grave reason" for my not giving deference to the Wisconsin supreme court's opinion. In the *Eisenberg* case, the court ruled that the defense of laches is not available in a disciplinary proceeding.

In confronting Mr. Charlton's appeal from the referee's rejection of the laches defense, the Wisconsin supreme court first analyzed the referee's findings on that issue and concluded that the referee "properly rejected the laches defense ... determining that the delay in the investigation and prosecution was not unreasonable and that Attorney Charlton failed to establish that it prejudiced his defense against the misconduct allegations." *Charlton*, 174 Wis.2d at 869, 498 N.W.2d 380. The Wisconsin supreme court's conclusion demonstrates that in addressing the laches defense raised by Mr. Charlton, it first considered the evidence advanced by Mr. Charlton in support of his defense, and, like the referee, concluded that such evidence was insufficient to prove the elements of that defense. Hence, the court did not bar Mr. Charlton from raising laches as a defense; it simply rejected that defense on its merits.

That the state court's decision declining to apply the laches defense was based on a ground independent of the application of the *Eisenberg* decision is further supported by the state court's own language. After addressing and dismissing the merits of Mr. Charlton's laches defense, the court then went on to consider (as an alternative ground) the applicability of its decision in *Eisenberg* stating "Even if laches were applicable here, it would not constitute a defense to this disciplinary proceeding." *Charlton*, 174 Wis.2d at 870, 498 N.W.2d 380 (citing *Eisenberg*, 144 Wis.2d 284, 423 N.W.2d 867).

Such language clearly indicates that the court's denial of his laches defense primarily rested on a ground separate from the *Eisenberg* holding. Even if the Wisconsin supreme court's application of *Eisenberg* was wrong, the primary basis on which the court rejected the laches defense—that the elements of the defense had not been established—is still viable.

Moreover, my research did not uncover any case law in which the Wisconsin supreme court held that the doctrine of laches actually barred the imposition of discipline in an attorney disciplinary proceeding; nor has Mr. Charlton identified any such authority.

Accordingly, I must decline Mr. Charlton's invitation to hold that the Wisconsin supreme court's application of its decision in *Eisenberg* to his disciplinary proceeding constitutes a "grave reason" warranting that I disregard the disciplinary decision of the Wisconsin supreme court.

## III. Credibility of Witnesses

Mr. Charlton's final argument in support of his motion for reinstatement challenges the credibility determinations made by the referee. In particular, he finds fault with the fact that the Wisconsin supreme court adopted the factual findings of the referee notwithstanding that the referee had found the testimony of Eugene Shorts not credible in connection with one count of misconduct. However, with respect to seven other counts of misconduct, the referee relied upon the testimony of Mr. Shorts.

The petitioner maintains that because the referee found Mr. Shorts' testimony not to be credible on one issue, the referee should not have found other portions of his testimony to be reliable. According to Mr. Charlton, the referee's finding that such testimony was credible under these circumstances and the adoption of the referee's findings by the Wisconsin supreme court amount to a "grave reason" to disregard the decision of the Wisconsin supreme court under *Selling*.

The Wisconsin supreme court has held that it will not interfere with a referee's assessment of the credibility of witnesses on appeal. *Disciplinary Proceedings Against Camacho*, 126 Wis.2d 104, 116, 375 N.W.2d 204 (1985). This holding reflects the general proposition that the trier of fact—here, the referee—is in the best position to assess the credibility of a witness. *Quadrini v. Clusen*, 864 F.2d 577, 583 (7th Cir.1989) ("trial court is always in the best position to review, weigh and determine the credibility of the witnesses and resolve any inconsistencies in their testimony."); *State of Wisconsin v. Harvey*, 139 Wis.2d 353, 378, 407 N.W.2d 235 (1987) ("credibility determinations are best reserved to the trial court"). I am unable to depart from this general proposition in order to reject the referee's findings regarding credibility with the cold record before me.

There is nothing inherently unreasonable or unjust with the referee's treating a witness' testimony as incredible on one issue yet credible on others. *See* 1 Devitt, Blackmar, Wolff, and O'Malley, *Federal Jury Practice and Instructions* § 15.01 (4th ed. 1992) ("... [trier of fact] may decide to believe all of [a] witness' testimony, only a portion of it, or none of it."); *State ex rel. Brajdic v. Seber*, 53 Wis.2d 446, 450, 193 N.W.2d 43 (1972) ("Testimony may be so confused, inconsistent, or contradictory as to impair credibility as to parts of the testimony without being so incredible that all of it must be rejected as a matter of law.").

I am not persuaded that the referee's findings concerning the credibility of Mr. Shorts and the adoption of those findings by the Wisconsin supreme court constitute a "grave reason" to depart from the Wisconsin disbarment decision under *Selling*.

Despite the several thoughtful contentions of petitioner's counsel, I must reject the petition for reinstatement. In view of the distressingly long delays that were incurred in this case, no costs will be assessed against the petitioner.

Therefore, IT IS ORDERED that Mr. Charlton's petition for reinstatement of his license to practice law in this court be and hereby is denied, without costs.