IN the MATTER OF DISCIPLINARY
PROCEEDINGS AGAINST Alan D.
EISENBERG, Attorney at Law.

Supreme Court

*Nos. 85–1723–D, 86–2206–D. Argued March 30, 1988.—Decided
June 2, 1988.*

(Also reported in 423 N.W.2d 867.)

For the appellant (Eisenberg) there were briefs by *Gerald P. Boyle* and *Gerald P. Boyle, S.C.,* Milwaukee and *Terry E. Johnson, Randy J. Parlee* and *Peterson, Johnson & Murray, S.C.,* Milwaukee.

For the respondent (Board of Attorneys Professional Responsibility) there were briefs by *Frank M. Tuerkheimer* and *LaFollette & Sinykin,* Madison.

Amicus curiae briefs were filed by *L. Mandy Stellman,* Milwaukee, for the National Organization for Women; *David L. Walther,* Milwaukee, for the American Civil Liberties Union of Wisconsin Foundation; *Raymond M. Dall'osto, Barry C. Slagle,* Milwaukee, for Wisconsin State Public Defender and *William A. Pangman,* Waukesha, for the Wisconsin Association of Criminal Defense Lawyers.

PER CURIAM. *Attorney disciplinary proceedings; attorney's license suspended.*

We consider together the appeals of Attorney Alan D. Eisenberg from the reports of the referees in two disciplinary proceedings recommending that his license to practice law be suspended as discipline for professional misconduct. The referee in Case No. 85–1723–D recommended that Attorney Eisenberg's license be suspended for 14 months as discipline for

having made statements to the press prior to a criminal trial which concerned the character, credibility and reputation of the accused, whom he represented, and his opinion of the evidence, the merits of the case and the innocence of his client; having entered into a contract regarding publication rights to the story of his representation of that criminal defendant; having participated in the preparation and filing of a civil complaint purported to have been prepared and filed by an individual *pro se* in connection with a pending extradition proceeding against his client; having failed to disclose relevant facts concerning the latter conduct in response to inquiries from the Board of Attorneys Professional Responsibility (Board) in its investigation; and having made offensive, undignified and discourteous remarks to a prosecutor concerning a witness and in closing argument to a jury concerning a prosecutor. In Case No. 86–2206–D, the referee recommended that Attorney Eisenberg's license be suspended for 30 days as discipline for having knowingly made a false statement intended for publication that the Attorney General had written him that counsel for an adverse party in pending litigation was chargeable with false swearing and perjury.

We adopt the factual findings of the referees in each proceeding, as they are not clearly erroneous; as modified below in Case No. 85–1723–D, we also adopt the referees' conclusions of professional misconduct based on those findings. We determine that the totality of Attorney Eisenberg's professional misconduct before us warrants the suspension of his license to practice law for a period of two years. By that misconduct Attorney Eisenberg has established a pattern of attempting to influence litigation by means prohibited by the rules governing the conduct of

attorneys, including misrepresentations to the court and, through the press, to the public. Such abuse of our court system warrants severe discipline. Moreover, as this is not the first occasion we have had to discipline him, Attorney Eisenberg has shown that severe discipline is needed to impress upon him the obligation to comport himself in accord with the ethical standards of the profession.

Attorney Eisenberg was admitted to the practice of law in Wisconsin in 1966, and practices in Milwaukee. The court suspended his license in November, 1970 for one year as discipline for having conducted a campaign of intimidation and harassment against a Milwaukee county judge, including soliciting complaints against that judge by newspaper advertisements and pressuring the judge to appoint him and his father to an advisory committee concerned with the administration of that judge's court. *State v. Eisenberg,* 48 Wis. 2d 364, 180 N.W.2d 529 (1970).

In Case No. 85–1723–D, the referee, Attorney Stewart G. Honeck (referee), made the following findings of fact and conclusions of law in respect to Attorney Eisenberg's conduct in four matters. The first of these concerned Attorney Eisenberg's representation in 1977 of a woman charged with arson and the murder of her husband. Following the filing of a criminal complaint and prior to trial, Attorney Eisenberg had four separate interviews with reporters from three publications and one news service concerning the matter. Reasonably anticipating them to be publicly disseminated, Attorney Eisenberg made the following statements: "[E]veryone knew [the husband] as violent," "there was a long history of brutality," "vicious cruelty—emotional cruelty [and sexual abuse of (the accused) and one, if not both, of their daugh-

ters]," "he was a violent hell-raiser and the whole town knew it. I've got a saint and a devil in the same case," "this is the classic case of a battered woman ... her husband finally pushed her over the brink. This woman had her own private torture chamber she went home to every night," that he "felt compelled to help what he called 'a beautiful person' who was also an abused woman and whose husband was a 'known hell-raiser,' an alcoholic and a wife beater," and "I will tell the jury what a rotten no-good son-of-a-bitch he was!" Those statements appeared in the *Daily Cardinal* and *Madison Press Connection* newspapers in Madison.

Finding that those statements related to the character, reputation and credibility of the accused, who was a prospective defense witness, and expressed his opinion on the evidence, the merits of the case and the guilt of the accused, the referee concluded that Attorney Eisenberg violated SCR 20.41(2),[1] which prohibits a lawyer from making such statements prior to trial. The referee noted that counsel for the Board had conceded that the misconduct allegations based on those statements, which had been made some eight years prior to commencement of this proceeding, were "stale" and that this could be considered a factor in determining discipline to be imposed for this misconduct.

In connection with this same matter, Attorney Eisenberg, his client and an author working on a book about the trial entered into an agreement by which Attorney Eisenberg and his client granted the author exclusive rights to the client's story of her life and trial and to Attorney Eisenberg's story to the extent it concerned the client. That contract provided that

---

[1]SCR 20.41 is set forth in its entirety in footnote 2.

Attorney Eisenberg and the client would receive 25 percent of all revenue received by the author from all sources and that he and his client would share 50 percent of the first serial rights. The referee concluded that Attorney Eisenberg's entering into that contract violated SCR 20.27(2), which prohibits a lawyer from entering into any arrangement or understanding with a client by which the lawyer acquires an interest in publication rights with respect to the subject matter of the lawyer's employment prior to conclusion of all aspects of the matter giving rise to that employment.

The second matter considered by the referee concerned Attorney Eisenberg's representation in 1984 of a man who had been arrested on a fugitive warrant from Ohio in connection with murder and robbery charges. A subsequent extradition order provided that the client was to be extradited unless there were a criminal charge or civil process pending against him. On March 14, 1984 Attorney Eisenberg filed a petition for writ of habeas corpus, alleging that his client could not be extradited because of an outstanding traffic citation for driving with a defective headlight. In a hearing on April 11, 1984, the court ruled that the defective headlight citation was neither a criminal charge nor civil process that would defeat extradition and ordered the client to be extradited on April 13, 1984. As he left the courtroom, Attorney Eisenberg asked when his client was going to be transported and told the assistant district attorney that he "may be filing a new writ."

The next day a *pro se* civil complaint was filed in the name of Dennis Sanders, alleging that the man to be extradited owed him money for damages to a taxicab he owned. It was conceded that the complaint had been typed in Attorney Eisenberg's office by

Kathy Bassler, a clerical person employed by his law firm. On April 13, 1984 Attorney Eisenberg filed a second habeas corpus petition on behalf of his client, attaching to it a copy of the Sanders complaint, which he claimed prevented his client's extradition. The extradition was stayed until the following day, at which time the court ruled that habeas corpus was an improper means to challenge the extradition order, and the client was then extradited. The Sanders complaint was subsequently dismissed for lack of prosecution.

The referee found that Attorney Eisenberg had directed Ms. Bassler to prepare the complaint as a *pro se* complaint in order to conceal from the court his involvement in its filing. The referee then concluded that Attorney Eisenberg had thereby engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20.04(4).

During its investigation of this matter, the Board wrote Attorney Eisenberg asking whether he, any employee or person associated with his office had advised or assisted Mr. Sanders in the preparation of the civil complaint against his client. Attorney Eisenberg responded, "To my knowledge, no employee or person associated with my office, under my direction, supervision or control advised or assisted Dennis Sanders in preparation of a civil suit against [my client]." The referee found that when he gave that answer, Attorney Eisenberg knew that his employee, Ms. Bassler, had typed the complaint but failed to disclose that fact to the Board.

The Board also asked Attorney Eisenberg whether he ever had any contact with Mr. Sanders regarding the civil action or any other matter, requesting the date and nature of any such contact. Attorney Eisen-

berg responded, "Yes, within the last month, Mr. Sanders came to my office and complained to me that a bar investigator was harassing and threatening him regarding his lawsuit against [my client]." The referee found, on the basis of a statement Attorney Eisenberg had made to a sheriff's deputy, that Mr. Sanders had called Attorney Eisenberg and asked him to represent him in a lawsuit against the client and that Attorney Eisenberg failed to disclose that information to the Board. By these responses to the Board, the referee concluded, Attorney Eisenberg failed to fully and fairly disclose relevant facts within his knowledge relating to the matter under investigation, thereby violating SCR 22.07(2).

The third matter considered in this proceeding concerned a criminal action in Milwaukee county circuit court in 1982. During closing argument to the jury in that action, Attorney Eisenberg made the following statements in reference to the prosecutor:

> "There is no excuse for that sleazy scum bag tactic.
>
> "He, you dirty rotten—how can you leave that out, Mr. [ ]? Does that stink. Talk about a smelly odor. That's what this case is all about. The man is sitting there like a dummy.
>
> "Mr. [ ], you don't even know what you are talking about or what you are doing in this courtroom."

The referee concluded that Attorney Eisenberg's personal remarks about opposing counsel constituted undignified and discourteous conduct degrading to a tribunal, in violation of SCR 20.40(3)(f), and offensive personality, in violation of the Attorney's Oath, SCR 40.13, and, as a consequence SCR 20.04(1).

A fourth matter considered by the referee dealt with Attorney Eisenberg's vulgar remarks concerning a state trooper who was to appear as a witness against his client in circuit court. The referee found that the comments constituted offensive personality, in violation of the Attorney's Oath. In this appeal, however, the Board elected not to pursue this matter, as the referee found that the comments had been made in a private conversation among Attorney Eisenberg, the prosecutor and the trooper. Accordingly, Attorney Eisenberg moved to dismiss that count of the disciplinary complaint and the Board did not oppose the motion. We grant that motion and have not considered that conduct or the referee's findings and conclusions in regard to it.

In his appeal from the referee's report and recommendation, Attorney Eisenberg first argued that, rather than merely being considered a mitigating factor in determining appropriate discipline, the lapse of time between the conduct complained of and the initiation of the disciplinary proceeding should bar his being charged with professional misconduct for the pretrial statements he made to the press concerning the pending criminal action and the contract he entered into with his client and the author for publication of his client's story. He contended that a lawyer should be "free of the anxiety of worrying about conduct that happened years ago, that was known years ago, but only became charges as perhaps an add on to a more recent transgression."

Attorney Eisenberg further asserted that his pretrial comments had not been directed to the pending litigation but to what he termed a "social issue"—the plight of battered women. He said he considered it his "duty" to discuss that issue. Also, he

293

asked that the disciplinary rule on pretrial statements by counsel, SCR 20.41, be read to prohibit only those statements that actually threaten the fair administration of justice. Relying on the referee's findings that his statements did not adversely affect the prosecution's case, no change of venue was required, there was no problem impaneling a jury, and the judge did not impose a gag order, Attorney Eisenberg contended that his statements did not threaten the fair adjudication of the client's criminal charge.

We deal with Attorney Eisenberg's arguments *seriatim.* First, we are not persuaded that the doctrine of laches does or should bar a proceeding the issue of which is an attorney's fitness to practice law as demonstrated by his professional conduct. However, a substantial lapse of time between professional misconduct and the initiation of disciplinary proceedings based thereon is a factor to be considered in the determination of appropriate discipline to be imposed, as it may affect the ends lawyer discipline is to achieve: protection of the public, the courts and the legal profession, rehabilitation of the attorney and deterrence of like misconduct by others.

Likewise unpersuasive is Attorney Eisenberg's contention that his pretrial statements were directed not to the impending criminal trial but to the battered woman issue. The statements themselves bespeak an attempt to portray Attorney Eisenberg's client to the public in a favorable light for purposes of the upcoming trial not only by referring to her positive character traits and reputation, but also by casting her victim in a villainous role.

We next consider Attorney Eisenberg's argument that the rule limiting an attorney's extrajudicial statements concerning the investigation and pending

litigation of a criminal matter impinges on his constitutional right of free speech. Attorney Eisenberg would have the court prohibit only those pretrial statements that threaten the fair administration of justice, instead of applying what he mistakenly terms the "blanket prohibition" of pretrial statements in SCR 20.41.

An examination of SCR 20.41[2] reveals not a "blanket prohibition" but, rather, an implicit stan-

[2]SCR 20.41 was replaced by SCR 20:3.6, effective January 1, 1988, as part of the court's adoption of the Rules of Professional Conduct for Attorneys. Prior to its repeal and as applicable to Attorney Eisenberg's conduct, SCR 20.41 provided:

**Trial publicity.** (1) A lawyer participating in or associated with the investigation of a criminal matter may not make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication and that does more than state without elaboration:

(a) Information contained in a public record.

(b) That the investigation is in progress.

(c) The general scope of the investigation including a description of the offense and if permitted by law, the identity of the victim.

(d) A request for assistance in apprehending a suspect or assistance in other matters and the information necessary to the request for assistance.

(e) A warning to the public of any dangers.

(2) A lawyer or law firm associated with the prosecution or defense of a criminal matter may not, from the time of the filing of a complaint, information, or indictment, the issuance of an arrest warrant, or arrest until the commencement of the trial or disposition without trial, make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication and that relates to:

(a) The character, reputation or prior criminal record (including arrests, indictments or other charges of crime) of the accused.

dard on the basis of which pretrial statements are permitted or prohibited. The rule is composed of

(b) The possibility of a plea of guilty to the offense charged or to a lesser offense.

(c) The existence or contents of any confession, admission or statement given by the accused or the accused's refusal or failure to make a statement.

(d) The performance or results of any examinations or tests or the refusal or failure of the accused to submit to examinations or tests.

(e) The identity, testimony or credibility of a prospective witness.

(f) Any opinion as to the guilt or innocence of the accused, the evidence or the merits of the case.

(3) Subsection (2) does not preclude a lawyer during the delineated period from announcing:

(a) The name, age, residence, occupation and family status of the accused.

(b) If the accused has not been apprehended, any information necessary to aid in the apprehension of the accused or to warn the public of any dangers the accused may present.

(c) A request for assistance in obtaining evidence.

(d) The identity of the victim of the crime.

(e) The fact, time and place of arrest, resistance, pursuit and use of weapons.

(f) The identity of investigating and arresting officers or agencies and the length of the investigation.

(g) At the time of seizure, a description of the physical evidence seized, other than a confession, admission or statement.

(h) The nature, substance or text of the charge.

(i) Quotations from or references to public records of the court in the case.

(j) The scheduling or result of any step in the judicial proceedings.

(k) That the accused denies the charges made against him or her.

(4) During the selection of a jury or the trial of a criminal matter, a lawyer or law firm associated with the prosecution or defense of a criminal matter may not make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication and that relates to the trial, parties or issues in the trial or

other matters that are reasonably likely to interfere with a fair trial, except that the lawyer or law firm may quote from or refer without comment to public records of the court in the case.

(5) After the completion of a trial or disposition without trial of a criminal matter and prior to the imposition of sentence, a lawyer or law firm associated with the prosecution or defense may not make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by public communication and that is reasonably likely to affect the imposition of sentence.

(6) Subsections (1) to (5) also apply to professional disciplinary proceedings and juvenile disciplinary proceedings when pertinent and consistent with other law applicable to those proceedings.

(7) A lawyer or law firm associated with a civil action may not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, that a reasonable person would expect to be disseminated by means of public communication and that relates to:

(a) Evidence regarding the occurrence or transaction involved.

(b) The character, credibility or criminal record of a party, witness or prospective witness.

(c) The performance or results of any examinations or tests or the refusal or failure of a party to submit to an examination or test.

(d) The lawyer or law firm's opinion as to the merits of the claims or defenses of a party, except as required by law or administrative rule.

(e) Any other matter reasonably likely to interfere with a fair trial of the action.

(8) During the pendency of an administrative proceeding, a lawyer or law firm associated with the proceeding may not make or participate in making a statement, other than a quotation from or reference to public records, that a reasonable person would expect to be disseminated by means of public communication if it is made outside the official course of the proceeding and relates to:

several stages of a criminal proceeding: investigation, the period from the filing of the complaint until commencement of trial, jury selection and trial, after trial but before sentencing. With respect to the latter two stages, the rule includes an explicit standard applicable to prohibited statements, namely, that they be "reasonably likely to interfere with a fair trial" or "affect the imposition of sentence."

While there is no standard explicitly set forth in those provisions relating to criminal investigation and pretrial stages, the rule is explicit in specifying the information a lawyer is or is not prohibited from commenting on. For example, at the investigation stage, a lawyer may state "without elaboration" the general scope of the investigation and a description of the physical evidence seized; after the complaint is filed and prior to trial, a lawyer is prohibited from making a statement relating to the character, reputation or prior criminal record of the accused but is not

(a) Evidence regarding the occurrence or transaction involved.

(b) The character, credibility or criminal record of a party, witness or prospective witness.

(c) Physical evidence or the performance or results of any examinations or tests or the refusal or failure of a party to submit to an examination or test.

(d) The lawyer or law firm's opinion as to the merits of the claims, defenses or positions of an interested person.

(e) Any other matter reasonably likely to interfere with a fair hearing.

(9) Subsections (1) to (8) do not preclude a lawyer from replying to charges of misconduct publicly made against the lawyer or from participating in the proceedings of legislative, administrative or other investigative bodies.

(10) A lawyer shall exercise reasonable care to prevent his or her employees and associates from making an extrajudicial statement that the lawyer would be prohibited from making under this rule.

prohibited from stating the accused's name, age, residence, occupation and family status.

■

It is clear from the kind of information permitted or prohibited prior to trial by subsections (1), (2) and (3) of the rule that only information reasonably likely to interfere with a fair trial is prohibited.[3] The

---

[3]The current rule, SCR 20:3.6, which replaced SCR 20.41, lists substantially the same kind of information set forth in former SCR 20.41(2) and considers it "ordinarily likely" to have a "substantial likelihood of materially prejudicing an adjudicative proceeding." SCR 20:3.6, initially promulgated in 1983 by the American Bar Association as part of the Model Rules of Professional Conduct, provides:

**SCR 20:3.6 Trial publicity**

(a) A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding.

(b) A statement referred to in paragraph (a) ordinarily is likely to have such an effect when it refers to a civil matter triable to a jury, a criminal matter, or any other proceeding that could result in deprivation of liberty, and the statement relates to:

(1) the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness;

(2) in a criminal case or proceeding that could result in deprivation of liberty, the possibility of a plea of guilty to the offense or the existence or contents of any confession, admission, or statement given by a defendant or suspect or that person's refusal or failure to make a statement;

(3) the performance or results of any examination or test or the refusal or failure of a person to submit to an examination or test, or the identity or nature of physical evidence expected to be presented;

provisions of the rule setting out an explicit standard, SCR 20.41(4) and (5), contain no such lists. This listing of prohibited information makes an explicit "reasonable likelihood" standard unnecessary. While the standard implicit in SCR 20.41(2) may differ from the "threat to the fair administration of justice" standard

(4) any opinion as to the guilt or innocence of a defendant or suspect in a criminal case or proceeding that could result in deprivation of liberty;

(5) information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudicing an impartial trial; or

(6) the fact that a defendant has been charged with a crime, unless there is included therein a statement explaining that the charge is merely an accusation and that the defendant is presumed innocent until and unless proven guilty.

(c) Notwithstanding paragraphs (a) and (b)(1–5), a lawyer involved in the investigation or litigation of a matter may state without elaboration:

(1) the general nature of the claim or defense;

(2) the information contained in a public record;

(3) that an investigation of the matter is in progress, including the general scope of the investigation, the offense or claim or defense involved and, except when prohibited by law, the identity of the persons involved;

(4) the scheduling or result of any step in litigation;

(5) a request for assistance in obtaining evidence and information necessary thereto:

(6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; and

(7) in a criminal case:

(i) the identity, residence, occupation and family status of the accused;

(ii) if the accused has not been apprehended, information necessary to aid in apprehension of that person;

(iii) the fact, time and place of arrest; and

(iv) the identity of investigating and arresting officers or agencies and the length of the investigation.

suggested by Attorney Eisenberg, we conclude that it strikes an appropriate balance between a lawyer's right of free speech and an accused's right to a fair trial; further, it promotes the public's interest in the fair administration of justice.[4]

We now consider the matter regarding the agreement for the publication of Attorney Eisenberg's client's story. We reject the argument that Attorney Eisenberg did not contract with the client or acquire any interest in the publication of her story but "merely exercised his freedom to contract by selling the publication interest of his own story regarding his role as counsel." On the contrary, he and his client agreed by contract to share the proceeds of the first serial rights of a published work; indeed, if the clients had received all of those proceeds and not given him his share, under the terms of the contract Attorney Eisenberg would have been authorized to sue her.

The next conclusion of the referee Attorney Eisenberg contested is that his remarks to the jury at

---

[4]In its brief *amicus curiae,* the Wisconsin State Public Defender referred to three different standards used in other jurisdictions in applying the equivalent of SCR 20.41: (1) reasonably likelihood of interference with a fair trial and prejudice to the administration of justice, (2) serious and imminent threat of interference with the fair administration of justice and (3) clear and present danger to the fair administration of justice. The *amicus* proposed that the latter standard be adopted in Wisconsin as most adequately protecting a lawyer's right of free speech, noting that it was adopted as one of the American Bar Association Standards for Criminal Justice. The *amicus* would have the court adopt that standard as a "constitutionally-compelled corollary" to our present rule, as well as to former SCR 20.41, and apply it in our consideration of the instant matter. Satisfied that the standards of former SCR 20.41 and current SCR 20:3.6 are adequate and proper, we decline to do so.

closing argument constituted misconduct. He argued that they were merely "an emotional outburst during the heat of argument" and he considered it significant that neither the prosecutor, who was the subject of those remarks, nor the court sought to admonish him. We are not persuaded. An attorney must expect to encounter "the heat of battle" in the practice of law and, accordingly, take appropriate care in the choice of vocabulary and demeanor addressed to the court, opposing counsel, witnesses and the jury. The fact that the presiding judge and opposing counsel took no action in response to Attorney Eisenberg's comments concerning the prosecutor has no bearing on the misconduct issue. Neither had the duty to admonish him for inappropriate remarks; either could have had good reason not to do so even if his comments were perceived to be offensive.

In the matter of the purported *pro se* complaint, Attorney Eisenberg argued that the Board failed to meet its burden to establish by clear and satisfactory evidence that he caused the complaint to be prepared in his office and filed in circuit court. He conceded that the complaint has been typed in his office by his employee, Ms. Bassler, but denied that he ordered it to be prepared. He pointed out that the Board called several witnesses to give evidence in this matter but did not call Ms. Bassler, his client, Mr. Sanders or Mr. Bowman, the man he characterized as "the moving force behind the complaint coming into existence and ... a friend of [his client's] and one who was present at the various court hearings on the habeas corpus proceedings and [the one] who filed the action." Attorney Eisenberg stated that he did not call any of those persons as witnesses because, at the stage of the proceeding when he would have, he had concluded

that the Board had failed to meet its burden of proof to establish his misconduct in the matter.

However, during his closing statement after testimony had been concluded and the parties had submitted proposed findings of fact to the referee, Attorney Eisenberg opposed the Board's position that the referee could infer from his failure to call Ms. Bassler that her testimony would have been adverse to him. He pointed out to the referee that the Board should have known what Ms. Bassler's testimony would be, as it had taken her deposition prior to the disciplinary hearing.

Upon learning that Ms. Bassler had been deposed by the Board, the referee reopened the disciplinary hearing and ordered her to appear as his witness. While not disputing the referee's authority to reopen the hearing and call the witness, Attorney Eisenberg asserted that doing so denied him due process and put him in an unfair position. He requested that in this appeal the court consider the record as it was prior to the referee's reopening of the hearing and determine that the Board had failed to prove its claim of professional misconduct.

In any event, Attorney Eisenberg argued, the testimony presented at the reopened hearing did not raise the level of the evidence to meet the clear and satisfactory standard, for Ms. Bassler merely testified that she could not recall who had directed her to prepare the complaint. Moreover, Attorney Eisenberg considered that the testimony of an attorney employed at the time in Attorney Eisenberg's office that Ms. Bassler told him that Attorney Eisenberg had directed her to prepare it was insufficient, as he had presented witnesses impeaching that attorney's credibility.

Attorney Eisenberg also attacked the referee's having drawn from his failure to present the testimony of Messrs. Sanders and Bowman a "strong inference" that their testimony would have been adverse to him. That attack is based on Attorney Eisenberg's contention that he had had no dealings with them and, consequently, had no reason to call them to testify. He contended that the Board could have called them to testify and, as it did not, the referee was not entitled to make findings based on their non-testimony.

On the issue of his failure to fully and fairly disclose the facts in this matter to the Board upon its request, Attorney Eisenberg took the position that he was merely responding "in kind" to the Board's request, that is, he answered what he considered narrowly drawn questions with equally narrowly drawn answers. He stated that, because he had not authorized Ms. Bassler to prepare the complaint, she was acting outside the scope of her employment and thus his response to the Board's question was accurate. Regarding his answer to the question concerning his contact with Mr. Sanders, Attorney Eisenberg claimed that he had accurately stated his belief at the time and, consequently, his answer was not evasive or untrue, nor did it establish failure to cooperate with the Board.

Attorney Eisenberg's argument on the burden of proof issue is without merit. The referee had ample evidence on which to find that Attorney Eisenberg directed Ms. Bassler to prepare the complaint and have it filed. In his report, the referee stated as the basis of his finding "(1) that on this record any other finding would violate common sense and (2) the

testimony of Martin Rosenthal that Bassler told him she typed the complaint at Alan Eisenberg's direction." That finding, made upon permissible inferences and the assessment of witness credibility, was not clearly erroneous. Further, the referee's conclusion based on that evidence that Attorney Eisenberg engaged in conduct involving dishonesty, fraud, deceit or misrepresentation was proper.

On the issue of discipline, contrary to the referee's recommendation of a 14-month suspension of his license, Attorney Eisenberg took the position that, at most, his conduct in these matters warrants the imposition of a public reprimand. Indeed, he considered that a private reprimand would have been the most severe discipline warranted, had a complaint not been filed with the court. We address this issue at the end of this opinion.

We turn now to the second disciplinary proceeding, Case No. 86–2206–D, in which Attorney Eisenberg appealed from the report of the referee, Attorney Charles Van Sickle (referee), recommending that his license to practice law be suspended for a period of 30 days as discipline for having made a false statement to a reporter concerning opposing counsel in pending litigation. We adopt the referee's findings of fact and conclusion thereon that Attorney Eisenberg engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20.04(4).

The referee made the following findings. In June of 1982 Attorney Eisenberg and another attorney represented opposing sides in an action in the circuit court for Milwaukee county. That action, as well as related litigation, involved a dispute between employees and management of a food business. In December, 1983 Attorney Eisenberg met with a reporter who had

already published articles in a neighborhood newsletter about Attorney Eisenberg's client, the president of the business, and was preparing to write another article on the pending litigation. During his interview with the reporter, Attorney Eisenberg made the following statement:

> "(1)  Attorney General of Wisconsin had written him a letter stating that, but for the running of the statute of limitations, opposing counsel was chargeable with false swearing and perjury in his application to the governor for a pardon from a criminal conviction.
> "(2)  The Attorney General told him that opposing counsel had obtained his license to practice law by fraud.
> "(3)  He had reliable reports that opposing counsel had offered cocaine to a certain person or that person's brother at a party."

The parties did not dispute that Attorney Eisenberg made those statements, only that they were false and known to be false when made.

The record discloses that a defamation action was brought against Attorney Eisenberg on the basis of those statements. The jury, finding that Attorney Eisenberg had made those representations and that they were false, awarded $38,000 for injury to the attorney's reputation, $11,000 for his loss of income and $500,000 in punitive damages. The trial court upheld the compensatory awards but reduced the punitive award to $250,000. The matter was settled on undisclosed terms while pending on appeal. The judge presiding in that defamation action said at the conclusion of the case:

"The jury verdict reflects a sense of outrage at this conduct, a sentiment shared by this Court. Eisenberg's conduct as found by the jury represents an attack and an assault on the American system of civil justice. He engaged in lawless and ruthless conduct with no legitimate purpose or excuse .... To attack another lawyer personally simply on the basis of his representation of opposing clients is totally wrong. To do so by falsely accusing the attorney of morally reprehensible crimes is outrageous conduct. A copy of this decision is being forwarded to the Board of Attorneys Professional Responsibility for their review pursuant to this Court's duties under SCR 60.01(7)."

Here, the referee found that the Board had failed to establish by clear and convincing evidence that two of the statements were false but found that the statement concerning the pardon application was false and that Attorney Eisenberg knew it was false when he made it. That finding was based on a letter dated June 3, 1983 from the Attorney General to Attorney Eisenberg responding to a letter Attorney Eisenberg had written inquiring into the pardon matter. In that letter, the Attorney General stated, in part,

"There is some authority for the proposition that a pardon obtained by fraud may be determined void. [Citation omitted.] However, because the information contained in your letter was obtained from the Governor's office, one must presume it was all available to Governor Knowles when he commuted [the attorney's] sentence and to Governor Lucey when he granted [him] a full pardon. This fact militates against a claim that the

307

sentence commutation and pardon were obtained by fraud.

"Even if one were to assume fraud, there certainly appear to be additional relevant considerations. First, while the statute of limitations regarding false swearing and/or perjury is not directly applicable, the policies which necessitate such a rule are equally applicable in the instant matter. Certainly, the dual concerns regarding finality and the rejection of stale claims are present in the instant matter. More important, you are requesting the present executive to review the actions of two previous governors, three and four times removed.

"In conclusion, there appear to be serious obstacles to having [the attorney's] sentence commutation and pardon vacated. However, because [he] is an attorney, you still have available the grievance process of the Board of Attorneys Professional Responsibility if you believe him guilty of misconduct warranting action by that board. I mention this for informational purposes only and not to endorse such action."

The referee found that letter "clear and unambiguous on its face" and "not in any manner say[ing] what Attorney Eisenberg claims it to say." He rejected Attorney Eisenberg's contention that the Attorney General had told him in a telephone conversation, either prior to or after the Attorney General's letter was sent, that, but for the statute of limitations, the attorney was chargeable with false swearing and perjury for failing to disclose a prior conviction in making application for a pardon.

The referee also rejected Attorney Eisenberg's contention that his statements were made as a private person, were unrelated to legal services he was

rendering to his client, had nothing to do with pending cases and were only a matter of public relations for his client. To the contrary, the referee determined that the statements made by Attorney Eisenberg could not be divorced from the pending litigation. Likewise rejected was Attorney Eisenberg's claim that his statements were not the proper subject of a disciplinary proceeding because they were not intended to achieve some personal gain, were not criminal in nature and were privileged under the First Amendment and common law, in light of opposing counsel's status as a public figure. In respect to the latter, the referee noted that, while Attorney Eisenberg introduced numerous newspaper clippings as exhibits at the disciplinary hearing apparently attempting to establish the attorney's position as a public figure, the privilege defense was neither argued nor otherwise raised in the course of this proceeding.

On the issue of the falsity of the statement that the Attorney General had said the attorney had obtained his license to practice law by fraud, presumably by having failed to disclose a prior conviction in his law school application, the referee found there was no direct evidence to establish that the statement was false. The Attorney General had testified in the defamation action that he could not recall the details of telephone conversations he had had with Attorney Eisenberg and could neither affirm nor deny having stated to Attorney Eisenberg that the attorney had secured his license by fraud. Accordingly, the referee concluded that the Board failed to establish by clear and convincing evidence that the statement concerning the procurement of the license was false. The referee also concluded that the Board failed to establish by clear and convincing evidence the falsity of

Attorney Eisenberg's statement regarding the cocaine matter, after weighing the credibility of conflicting testimony and rejecting that of the Board's witness, the man who Attorney Eisenberg claimed had told him of the incident.

In making a recommendation for discipline, the referee considered Attorney Eisenberg's arguments in mitigation: that his conduct did not harm or pose a threat to the general public but was confined to himself and opposing counsel and that his statements were never published. The referee determined that Attorney Eisenberg's conduct was designed to discredit an attorney opposing him in litigation, the effect of which would be to compromise that attorney's ability to represent his clients and might well influence the outcome of the litigation. Regardless of actual harm resulting from that conduct, the referee recognized that the potential for harm was great: "[The false statement] could influence the litigation and jeopardize the fairness of the judicial process, to the detriment of the client and the public."

On appeal Attorney Eisenberg contended that the referee's finding that his statement regarding opposing counsel's pardon application was false is clearly erroneous for the reason that the content of that statement was true, although his having said that the Attorney General had *written* him to that effect was incorrect. He claimed the Attorney General had made that statement to him by telephone and thus his only misrepresentation was of the means by which the statement had been made. The Attorney General, however, testified that he was unable to recall making that statement in a telephone conversation with Attorney Eisenberg.

Attorney Eisenberg also claimed the Attorney General's letter may be read as a statement of the attorney's wrongdoing, which he would have the court infer from the Attorney General's having written that there was nothing his office was in a position to do to vacate the pardon. Attorney Eisenberg asserted that such "disclaimer" would have been unnecessary had there not been wrongdoing. He also contended that the Attorney General had suggested in his letter that he take the matter up with the Board of Attorneys Professional Responsibility, which he asserted "clearly infers the existence of the need for such investigation." These mischaracterizations of the contents of the letter were considered and rejected by the referee; we do likewise.

We also reject Attorney Eisenberg's argument that in order to constitute misconduct, a lawyer's misrepresentation must have been made to a client, a judge or a jury, must have been made to gain some advantage from the client and must have been made in the context of the lawyer's role as lawyer, not as private citizen. He asserted that his statements arose out of purely personal, not professional, activity and were not directly associated with any pending legal matters. The referee rejected this argument in denying a motion to dismiss the disciplinary proceeding.

Attorney Eisenberg's next argument, based on principles of defamation law, is that his statements were constitutionally privileged and therefore not subject to discipline. He also argued that he enjoyed a common law privilege to make the statements, as they were made "to fulfill the important public purpose of bringing to light misconduct of an attorney involved in a public controversy." He further contended that the statements were made to protect the interests of

Attorney Eisenberg and his clients in the pending litigation, as any settlement of that litigation might have been rendered void if it had been subsequently determined that opposing counsel had procured his license to practice law by fraud.

Attorney Eisenberg conceded that there is no authority for the proposition that a constitutional privilege protecting his speech from liability for defamation applies to attorney disciplinary proceedings but he argued that the same public policy considerations underlying the constitutional and common law privileges should make those privileges applicable to disciplinary proceedings. Although this was raised as an affirmative defense in Attorney Eisenberg's answer to the Board's complaint in the disciplinary proceeding, the referee did not address it in his report, other than to state that the defense had not been argued or otherwise raised in the course of the proceeding. We decline to consider this argument made for the first time on appeal.

On the issue of discipline, Attorney Eisenberg contended that the recommended 30-day license suspension is excessive. He argued that his conduct did not harm or pose a threat to the general public and he attempted to minimize the seriousness of the conduct by characterizing it as merely a matter between two lawyers on opposing sides in litigation. He also asserted that there is no likelihood of future misconduct of the same type, as he has "suffered through a protracted civil lawsuit in which he sustained substantial personal liability even after settlement."

We adopt the referee's findings that Attorney Eisenberg's statement to the reporter concerning what the Attorney General allegedly had written

concerning opposing counsel's pardon application was false and known to be false when made. Those findings were not clearly erroneous, as they were based on the letter itself and the referee's assessment of the credibility of Attorney Eisenberg's uncorroborated testimony that the Attorney General had made the statement to him in a telephone conversation. We also adopt the referee's conclusion that, by making that statement to the reporter, Attorney Eisenberg engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20.04(4).

Before addressing the issue of discipline, we consider Attorney Eisenberg's objections to the Board's statement of costs incurred in these proceedings and to the assessment of those costs against him. In Case No. 85–1723–D, he objected that "portions of the counsel fees, referee fees, court reporter fees and witness fees itemized therein are attributable to counts asserted against respondent-appellant in the complaint on which the Board failed to meet its burden of proof and on which the Board had no reasonable prospect of meeting its burden of proof." No other ground was stated and no further specification of objectionable costs was made. In response to that objection, the Board pointed out that two of the eight counts of professional misconduct in its complaint were dismissed prior to hearing and, as a result, no testimony was presented on them; on each of the remaining six counts the referee concluded that Attorney Eisenberg had engaged in professional misconduct and recommended imposition of discipline.

In Case No. 86–2206–D, Attorney Eisenberg argued that, as the Board failed to establish by clear and convincing evidence that two of the three statements he made to the reporter were false, he should be

assessed only those costs attributable to the Board's efforts to establish the falsity of the one statement. Attorney Eisenberg further objected to the Board's statement of costs on the same basis as stated in Case No. 85–1723–D. In response, the Board asserted that, although based on three factual allegations, only one of which the Board was successful in establishing to the applicable evidentiary standard, there was but one allegation of professional misconduct—misrepresentation. We also note that the referee did not find that two of the three statements Attorney Eisenberg had made were true; rather, the referee concluded merely that the Board failed to meet its burden of proof, in the one case because the evidence presented inferences the referee considered unwarranted and in the other case because the Board's witnesses' credibility had been impeached.

■ We reject Attorney Eisenberg's objections to the statements of costs and decline his request to apportion costs and assess them according to the number of counts of professional misconduct set forth in the Board's complaints that resulted in determinations of professional misconduct. We rejected a similar request in *Disciplinary Proceedings Against Wheeler,* 108 Wis. 2d 573, 322 N.W.2d 885 (1982).

We now consider discipline to be imposed for all of the professional misconduct before us in these two proceedings. All of it originally was the subject of Case No. 85–1723–D, but the allegations based on Attorney Eisenberg's statements regarding what the Attorney General's had written concerning opposing counsel were the subject of a separate complaint filed in that proceeding after the original complaint had been filed. The referee assigned to Case No. 85–1723–D found

cause to recuse himself from consideration of the matter raised in the second complaint and, consequently, the second complaint was dismissed from Case No. 85–1723–D without prejudice, docketed as a separate proceeding and assigned to a different referee. We subsequently consolidated the two proceedings for purposes of consideration and decision.

Notwithstanding there were two proceedings, each considering separate misconduct and presenting separate recommendations for discipline, it is appropriate to impose a single disciplinary sanction for all of Attorney Eisenberg's professional misconduct, rather than determining separate sanctions for each of the matters or combinations thereof and imposing a cumulative sanction. We determine that the seriousness of the professional misconduct before us warrants the suspension of Attorney Eisenberg's license to practice law in Wisconsin for two years.

That misconduct consisted of prohibited statements to the press concerning a pending criminal trial, a prohibited agreement acquiring publication rights to a client's legal matter, offensive language made to a jury regarding a prosecutor, an attempt to delay a client's extradition by filing what was misrepresented to be a *pro se* civil complaint, a misrepresentation to a reporter concerning alleged wrongdoing on the part of opposing counsel in a pending case and evasive responses to Board inquiries. The fact that some of that misconduct was concededly stale as a result of the passage of time between its commission and the initiation of disciplinary proceedings does not insulate it from sanction; it will serve, however, to mitigate the severity of any sanction to be imposed for that misconduct. The most serious misconduct was

Attorney Eisenberg's repeated attempts to impermissibly influence the outcome of pending litigation, civil and criminal, by statements made to the press and intended for publication. That misconduct threatened harm not merely to opposing sides in litigation but to the court system itself. Attorney Eisenberg intentionally and actively sought to interfere with the fair adjudication of matters in our courts, to the extent of misrepresenting facts concerning criminal liability of opposing counsel. Further, he attempted to perpetrate a fraud upon the court by misleading it into believing a legitimate ground existed to delay his client's extradition and then sought to conceal his acts from the court and from those investigating his conduct.

It is clear that the court system and the public need protection from such abuses of the legal system. Also, Attorney Eisenberg must be made to understand and accept the responsibilities of the legal profession and the ethical constraints placed upon its practice. A severe sanction is called for to accomplish this. It is apparent that the one-year license suspension imposed on him in 1972, itself a severe sanction, was not sufficient to do so.

IT IS ORDERED that the license of Alan D. Eisenberg to practice law in Wisconsin is suspended for a period of two years, commencing August 1, 1988.

IT IS FURTHER ORDERED that within 120 days of the date of this order Alan D. Eisenberg pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing of his inability to pay the costs within that time, the license of Alan D. Eisenberg to practice law in Wisconsin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that Alan D. Eisenberg comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.