# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP1965-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Joseph L. Sommers, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant, |
| | v. |
| | Joseph L. Sommers, Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST SOMERS

| | |
|---|---|
| OPINION FILED: | AUGUST 5, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ABRAHAMSON, C.J., dissents. (Opinion filed.) |
| | CROOKS, J., dissents. (Opinion filed.) |
| NOT PARTICIPATING: | ZIEGLER, GABLEMAN, JJ., did not participate. |

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP1965-D

STATE OF WISCONSIN : IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Joseph L. Sommers, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

    **v.**

**Joseph L. Sommers,**

      **Respondent.**

**FILED**

**AUG 5, 2014**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney publicly reprimanded.*

¶1 PER CURIAM. We review, pursuant to SCR 22.17(2),[1] the report of Referee John B. Murphy recommending the court suspend

---

[1] SCR 22.17(2) states:

> If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

Attorney Joseph L. Sommers' license to practice law for a period of 60 days for professional misconduct. This was a default proceeding. No appeal was filed.

¶2 We approve and adopt the referee's findings of fact and conclusions of law. We agree that Attorney Sommers' misconduct warrants public discipline, but deem a public reprimand sufficient. We impose the full costs of the proceeding on Attorney Sommers, which total $5,033.16 as of August 8, 2013.[2]

¶3 Attorney Sommers was admitted to practice law in Wisconsin in 1992. His Wisconsin law license is currently suspended for nonpayment of State Bar dues and for noncompliance with continuing legal education (CLE) requirements. Attorney Sommers was previously suspended for 30 days as discipline in a matter that is intertwined with the allegations in the pending complaint. In re Disciplinary Proceedings Against Sommers, 2012 WI 33, 339 Wis. 2d 580, 811 N.W.2d 387.

¶4 In 2001 A.R. was charged, and later acquitted of, homicide by negligent operation of a motor vehicle. The case was initially prosecuted by Assistant District Attorney Paul Humphrey. Attorney Sommers defended A.R. Interactions between the two lawyers were contentious.

¶5 In November 2006 the Office of Lawyer Regulation (OLR) charged both Attorney Sommers and Attorney Humphrey with

---

[2] The OLR has also filed a statement indicating no restitution is warranted in this matter.

professional misconduct based on incidents that occurred during the prosecution of A.R.

¶6 On January 2, 2007, Attorney Sommers announced his candidacy for the Wisconsin Supreme Court. On January 4, 2007, Attorney Sommers wrote a letter to the Chief Justice of the Wisconsin Supreme Court. He provided copies of this letter to all of the Wisconsin Supreme Court justices and to the OLR. Attorney Sommers did not provide a copy to counsel for Attorney Humphrey.

¶7 In the January 4, 2007 letter Attorney Sommers advised the court of his supreme court candidacy. He also claimed that Attorney Humphrey engaged in prosecutorial misconduct in the A.R. case and in several other cases. His allegations far exceeded the scope of the official court record in the then-pending Humphrey disciplinary matter. The letter was posted to Attorney Sommers' web site, www.sommersforsupremecourt.com.

¶8 Counsel for Attorney Humphrey filed a grievance with the OLR asserting, inter alia, that Attorney Sommers did not contemporaneously provide a copy of this letter and accompanying materials to him.

¶9 On February 5, 2007, Attorney Sommers issued a press release entitled, "Corruption in Wisconsin Courts——Supreme Court Candidate Speaks Out" (hereinafter "Press Release"). The Press Release describes Attorney Sommers' reasons for seeking election to the court and purports to explain, as relevant here, "How innocent defendants plead out every day in Wisconsin courts,"

and "[h]ow judges are permitted to get away with falsifying the record."

¶10 Counsel for Attorney Humphrey filed another grievance alleging this Press Release constituted an unsubstantiated attack on the courts and judges of Wisconsin and was designed to undermine public confidence in the judiciary in violation of the Attorney's Oath.

¶11 Following receipt of these grievances, the OLR directed Attorney Sommers to respond, in writing, to the assertion that his letter and the Press Release violated rules of professional conduct. Attorney Sommers sent his written response to the OLR's inquiry, a letter dated May 21, 2007, directly to the supreme court, rather than to the OLR.

¶12 Counsel for Attorney Humphrey filed a third grievance asserting that this letter was an improper attempt to influence the supreme court and constituted an ex parte communication.

¶13 On January 9, 2008, the OLR provided Attorney Sommers with a preliminary investigative report relating to the above-mentioned grievances. On January 24, 2008, Attorney Sommers sent another letter to the chief justice, with copies to the other justices and to various other individuals and entities in addition to the OLR.

¶14 On September 6, 2012, the OLR filed the pending disciplinary complaint alleging that the three letters sent January 4, 2007, May 21, 2007, and January 24, 2008, each constitute an impermissible ex parte communication with a judge or other official in violation of former or current

4

SCR 20:3.5(b)[3] (Count One); that by publishing or allowing to be published on his web page the January 4, 2007 letter to the supreme court, Attorney Sommers made extrajudicial statements that he knew or reasonably should have known would have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter, in violation of (former) SCR 20:3.6(a)[4]

---

[3] Former SCR 20:3.5(b) (effective through June 30, 2007) applied to the first two letters and stated:

> A lawyer shall not: . . . (b) communicate ex parte with such a person except as permitted by law or for scheduling purposes if permitted by the court. If communication between a lawyer and judge has occurred in order to schedule a matter, the lawyer involved shall promptly notify the lawyer for the other party or the other party, if unrepresented, of such communication; . . . .

Current SCR 20:3.5(b) (effective as of July 1, 2007) applies to the third letter and states:

> A lawyer shall not: . . . (b) communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order or for scheduling purposes if permitted by the court. If communication between a lawyer and judge has occurred in order to schedule the matter, the lawyer involved shall promptly notify the lawyer for the other party or the other party, if unrepresented, of such communication; . . . .

[4] Former 20:3.6(a) (effective through June 30, 2007) stated:

> A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

5

(Count Two); and that by publishing the Press Release on an Internet web site, Attorney Sommers violated the Attorney's Oath, SCR 40.15, by failing to maintain the respect due to courts of justice and judicial officers, made actionable via SCR 20:8.4(g)[5] (Count Three). The OLR asked the court to suspend Attorney Sommers' license for 60 days.

¶15 The court appointed Referee John Murphy on November 19, 2012. Attorney Sommers did not participate in the proceeding and, on January 10, 2013, the OLR moved for a default judgment. After ordering a continuance to ensure that Attorney Sommers was properly served, the referee found that Attorney Sommers had failed to appear and that default judgment was appropriate. Accordingly, the referee's findings of fact are based on the allegations of the complaint filed by the OLR.

¶16 The referee requested the parties brief the issue of discipline. The OLR filed a brief reiterating its request for a 60-day suspension and imposition of full costs. Attorney Sommers did not respond. On July 22, 2013, the referee filed a report recommending a 60-day suspension.

¶17 Neither party appealed. The court is now tasked with considering whether the referee's factual findings are clearly erroneous and considering, de novo, whether the conclusions of law are correct. In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. We

---

[5] SCR 20:8.4(g) states it is professional misconduct for a lawyer to "violate the attorney's oath; . . . ."

are free to impose whatever discipline we deem appropriate, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686. In light of Attorney Sommers' failure to appear or participate in this case, default judgment is appropriate. Neither party challenged the referee's findings of fact. We adopt those findings, which are based on the allegations in the OLR's complaint.

¶18 The complaint alleges that the three above-mentioned letters sent by Attorney Sommers to the supreme court were impermissible ex parte communications in violation of current or former SCR 20:3.6.

¶19 To ensure the record is clear, we note that the January 4, 2007 letter was not filed in the Humphrey disciplinary case file. The letter was addressed to the chief justice and did not include a case number. The court construed the letter as a complaint against the OLR filed pursuant to SCR 22.25(8)[6] because, in addition to the myriad of accusations regarding Attorney Humphrey, Attorney Sommers asked the court to investigate the OLR's handling of his own disciplinary case. He

---

[6] SCR 22.25(8) states:

> Allegations of malfeasance against the director, retained counsel, a member of a district committee, a member of the preliminary review committee, a member of the board of administrative oversight, a special investigator, a member of the special preliminary review panel, or a referee shall be referred by the director to the supreme court for appropriate action.

asserted in the letter that the complaint filed against him was "falsified," and that the OLR had failed to pursue allegations he made concerning Attorney Humphrey's conduct.

¶20 Regardless of how the January 4, 2007 letter was construed for filing purposes, it contained sweeping accusations regarding Attorney Humphrey.  Attorney Sommers sent the letter to all members of this court while Humphrey's disciplinary proceeding was pending before this court.  Attorney Sommers did not provide counsel for Attorney Humphrey with a copy of the letter.  The referee correctly concluded that this letter was an impermissible ex parte communication, and we accept that conclusion.

¶21 Attorney Sommers' letter dated May 21, 2007, also contained statements concerning Attorney Humphrey and was sent to the court during the pendency of Humphrey's disciplinary proceeding.  Although several public officials are copied on the letter, counsel for Attorney Humphrey is not.  Again, we agree with the referee's conclusion that this letter was an impermissible ex parte communication.

¶22  Finally, we note that Attorney Sommers' January 24, 2008 letter indicates several individuals were "copied" on the letter, including counsel for Attorney Humphrey.  The OLR's complaint, however, avers that counsel did not contemporaneously receive a copy of this letter.  The referee deemed the allegations in the complaint as true and thus concluded that this letter was another impermissible ex parte communication. We accept that conclusion.

¶23 We next consider whether Attorney Sommers made extrajudicial statements that he knew or reasonably should have known would have a substantial likelihood of materially prejudicing an adjudicative proceeding in violation of SCR 20:3.6(a) when he published or allowed to be published his January 4, 2007 letter on his webpage. The rule then in effect, SCR 20:3.6(a) provided:

> A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

¶24 We accept the referee's uncontested findings and conclusion that by posting the January 2007 letter on his website, Attorney Sommers violated the aforementioned rule.

¶25 The OLR alleges and the referee agreed that Attorney Sommers violated the Attorney's Oath, SCR 40.15, made actionable via SCR 20:8.4(g) when he posted a press release on a web site established to promote Attorney Sommers' candidacy for judicial office in which he sweepingly asserts, inter alia, that "judges are permitted to get away with falsifying the record."

¶26 In State v. Eisenberg, 48 Wis. 2d 364, 180 N.W.2d 529 (1970), this court stated:

> License to practice law in this state is granted on implied understanding that an attorney shall at all times demean himself in proper manner and refrain from such practices which bring disrepute upon himself, the profession and the courts. This implied understanding

9

is also affirmed by the oath taken by the attorney on admission to practice.

Id. at 380-81. The Attorney's Oath states, in pertinent part:

> I will maintain the respect due to courts of justice and judicial officers;
>
> . . . .
>
> I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged; . . . .

See SCR 40.15.

¶27 Thus, a lawyer may violate the Attorney's Oath by conduct that occurs out of court as well as by in-court conduct. See In re Disciplinary Proceedings Against Johann, 216 Wis. 2d 118, 574 N.W.2d 218 (1998) (disciplining attorney for distributing a handout strongly critical of the man who was her child's father and the man's wife). Often, alleged violations of SCR 40.15 involve the "offensive personality" component of the oath. Here, the OLR alleges that Attorney Sommers failed to abide by that component of the oath that requires lawyers maintain the respect due to courts of justice and judicial officers.

¶28 We must take care to limit the scope and application of the Attorney's Oath so that it does not reach a substantial amount of constitutionally protected conduct or significantly inhibit an attorney's exercise of the right of free speech. We are reluctant to deem that statements made during a judicial election violate the Attorney's Oath. The Attorney's Oath

10

should not be invoked to stifle legitimate critique of judicial administration or process.

¶29 However, Attorney Sommers' sweeping assertion that "judges are permitted to get away with falsifying the record" reflects outspoken contempt for the entire court system. He has declined to participate in this proceeding. The facts underlying the referee's conclusion that Attorney Sommers violated that portion of the Attorney's Oath requiring an attorney licensed by this court to maintain the respect due to courts and judicial officers are a matter of record and are not disputed. We emphasize that this determination is made in the context of a default proceeding and our holding is limited to the facts of this case. In sum, the referee's findings of fact on this point have not been shown to be clearly erroneous, and we adopt them as well as his conclusion of law.

¶30 The referee recommends a 60-day suspension. As the referee observes, improper ex parte communications typically result in a range of sanctions from a private reprimand to a one-year suspension. See, e.g., In re Disciplinary Proceedings Against Ragatz, 146 Wis. 2d 80, 86, 429 N.W.2d 488 (1988) (concluding that an attorney's written ex parte communications with a judge was deemed "an advocacy piece" designed to influence the outcome of litigation justifying a 60-day suspension). Similarly, discipline for improper publicity has resulted in discipline ranging from private reprimands to lengthy suspensions. See, e.g., Private Reprimand No. 1994-17 (district attorney violated SCR 20:3.6 with statements to press

11

about defendant); <u>In re Disciplinary Proceedings Against Eisenberg</u>, 144 Wis. 2d 284, 423 N.W.2d 867 (1988). Violation of the Attorney's Oath also yields sanctions ranging from a private reprimand to a six-month suspension. <u>See, e.g.,</u> <u>Johann</u>, 216 Wis. 2d at 120-21, 128 (six-month suspension for attorney who made inflammatory statements about her estranged husband during a custody battle); <u>In re Disciplinary Proceedings Against Blask</u>, 216 Wis. 2d 129, 573 N.W.2d 835 (1998) (publicly reprimanding lawyer who engaged in separate physical altercations with people).

¶31 Attorney Sommers has previously been disciplined in a matter that included a violation of the Attorney's Oath. As an experienced lawyer, Attorney Sommers should know that contemporaneously copying opposing counsel on correspondence relating to the matters at issue is not a mere courtesy but an ethical requirement. Without excusing the misconduct, which is serious, we are mindful that this proceeding stems from and is intertwined with the underlying disciplinary proceedings and prosecution of A.R., which elicited extraordinary and, we hope, unusual animosity between opposing counsel. On careful consideration, we deem a public reprimand sufficient to address Attorney Sommers' misconduct in this matter.

¶32 No objection to costs was filed. We accept the referee's recommendation that Attorney Sommers should be required to pay the full costs of this proceeding which total $5,033.16.

12

¶33  IT IS ORDERED that Joseph L. Sommers is publicly reprimanded for professional misconduct.

¶34  IT IS FURTHER ORDERED that within 60 days of the date of this order, Joseph L. Sommers shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶35  IT IS FURTHER ORDERED that the director of the Office of Lawyer Regulation shall advise the court if there has not been full compliance with all conditions of this order.

¶36 ANNETTE KINGSLAND ZIEGLER, J., and MICHAEL J. GABLEMAN, J., did not participate.

¶37 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting)*. The allegations in the pending complaint are intertwined with matters for which Attorney Sommers and Attorney Humphrey have each been suspended for 30 days.

¶38 I do not condone Attorney Sommers' conduct, but I do grasp his distress about what he views as injustices to his client and slip-ups in the disciplinary proceeding against him.

¶39 Attorney Sommers is presently not eligible to practice law. He has not paid State Bar dues; he has not complied with continuing legal education requirements. Attorney Sommers advised the court in the previous disciplinary proceeding that a suspension might mean that he could never practice law.

¶40 The court has discretion whether to impose discipline. SCR 21.16. I would not impose any discipline in the present matter.

1

¶41 N. PATRICK CROOKS, J. *(dissenting).* I respectfully dissent in regard to the discipline imposed. Rather, I would follow the recommendation of the Referee, John B. Murphy, and impose a 60-day suspension and require the respondent to pay the full costs of the proceedings.